## JAMES et al. v. GROFF, Appellant.

### Division Two, June 26, 1900.

1. **Partition:** POSSESSION: SUIT TO DECLARE A TRUST. Where the equitable title is in plaintiff and the legal title in defendant, a suit to have defendant declared a trustee for the benefit of plaintiffs and to partition the lands may be maintained, although the defendant is in possession.

2. **Negotiable Notes:** INDORSEMENT BY WIFE TO HUSBAND. The mere blank indorsement by a wife of negotiable notes to her husband, without any value received, falls short of the express assent of the wife required by the statute for the reduction of her property to his possession.

3. **Title Held in Trust:** NOTES: INDORSEMENT. Two sisters sold their land, and took a deed of trust to secure the payment of the purchase money evidenced by negotiable notes. These they indorsed in blank to the husband of one of them, for collection, he paying nothing for them. He then had the property sold by the trustee, bought it in, had the trustee make him a deed as the purchaser, and credited the amount of his bid on the notes. *Held*, that he held the title as trustee for the two sisters, and after the death of his wife, her heirs

James v. Groff.

and the surviving sister could bring suit against him to recover the title and have the lands partitioned, although he was then in possession.

5. ———: SUBSEQUENT ACQUISITION: BURDEN. When it has been once shown that defendant holds title to land as trustee for his wife and her sister, the burden is then on him to show a subsequent valid acquisition by him of their interests.

6. ———: ———: COMPETENT WITNESS. The defendant is not a competent witness against his deceased wife's heirs, to show that he acquired her interest in land under an ante-nuptial contract to give him the land if he would marry her. And a subsequent sale of the land by her and the taking of the notes to her as payment therefor is proof that no such contract was ever made.

7. **Fraudulent Deed:** PROMISE TO SUPPORT: OVERREACHING GRANTOR. Two sisters sold their land and took a deed of trust to secure the payment of the balance of the purchase money, and, the maker defaulting, they indorsed the notes to the husband of one of them for collection and he had the land sold under the deed of trust, bought it in in his own name, had the trustee convey it to him, and credited the amount of his bid on the notes. The title being thus held by him as trustee for the two sisters, the heirs of the one who was his wife and the surviving one brought suit to have the title vested in them, and thereupon he got the surviving sister to make him a quitclaim deed in consideration of a promise to support her for life. The evidence showed that she had never been married; that for more than ten years she had lived with him and her deceased sister, had nursed his children and looked to him to do the trading for the family; she was old, lonely and ignorant and so infirm that her sister in her lifetime dressed and undressed her and put her in bed. After her sister's death she was left alone and went to the house of a sister-in-law, and after this suit was brought defendant's son, who was a lawyer, visited her, offered her his sympathy and took her to her sister's grave which she had never before visited, and then induced her to return to the old home, told her the suit had been improperly brought and that she could not recover, and finally at his suggestion she agreed to make his father, the defendant, a quitclaim deed if he would give a bond for her support. Defendant sent for a justice of the peace, dictated the terms of the papers, and she did nothing more than acknowledge the deed. Her attorneys were not present, nor any relative, and they knew nothing about the transaction until it was completed. *Held*, that said quitclaim deed was the result of an unconscionable bargain, and was properly set aside as a fraud, and was no bar to her suit.

James v. Groff.

Appeal from Moniteau Circuit Court.—*Hon. Dorsey W. Shackleford*, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*James E. Hazell, John Cosgrove* and *Edmund Burke* for appellant.

(1) The relations were those of natural affection and interest and no undue influence was shown, much less any actual fraud, and under the evidence the chancellor found against the weight of the testimony and his finding should be reversed with directions. Hamilton v. Armstrong, 120 Mo. 597. (2) Rachel Groff indorsed the notes over to her husband, and Lizzie says her sister wanted him to have them. This writing fairly transfers the notes and by her express assent, within the meaning of sec. 6869, R. S. 1889. (3) In this case the wife had indorsed the notes to her husband and that transfer was in writing, why does it not then become the husband's property, just as money if reduced to possession would, by the right of marriage? The proof to establish a trust in favor of the wife, must be strong, clear and unequivocal. Moddrell v. Riddle, 82 Mo. 31.

*Moore & Williams* for respondents.

(1) Suits for partition will lie in behalf of those having only equitable titles. Welch v. Anderson, 28 Mo. 293; Reed v. Robertson, 45 Mo. 580; Holloway v. Holloway, 97 Mo. 628. (2) Conflicting claims and interests of parties, among themselves, including rents, improvements, etc., may be settled in such suit. R. S. 1889, sec. 7134 et seq., and sec. 7148; Thompson v. Holden, 117 Mo. 119; Benoist v. Thomas, 121 Mo. 660; Gunn v. Thruston, 130 Mo. 344. (3)

The suit at bar is wholly equitable, and the trial court had full power to set aside the deed to defendant, by which he held the legal title, in fraud, as to the equitable owners of the real estate. Hamilton v. Armstrong, 120 Mo. 597; Budde v. Rebenack, 137 Mo. 179. (4) The notes given the sisters by the purchaser, Keck, were not assigned to the defendant, Groff, that he should become the legal owner thereof, and the trial court so found. As to the wife, she being dead, defendant was not a competent witness. There was no proof that defendant became the owner of his wife's interest in the notes in accordance with the laws of this State. He married her in 1879. R. S. 1889, sec. 6869; Rogers v. Bank, 69 Mo. 560; Hart v. Leete, 104 Mo. 335; Leete v. Bank, 115 Mo. 184. (5) If he did, in fact, get the indorsement on the back of the notes (which was not proven), that did not give him the ownership thereof. There was no consideration therefor. McGuire v. Allen, 108 Mo. 403. (6) The investing of the notes to the extent of her interest in the $1,000 bid on the land, only made him a trustee for his wife's benefit as to the legal title taken to himself, whether with her knowledge and consent, or without it. Broughton v. Brand, 94 Mo. 169; Gilliland v. Gilliland, 96 Mo. 522; Alkire Grocer Co. v. Ballenger, 137 Mo. 369; Seay v. Hesse, 123 Mo. 450.

GANTT, P. J.—A suit in equity was instituted by plaintiffs to have the defendant adjudged a trustee, holding the legal title to three-fourths of the northeast quarter of section 8, township 43, range 15, except one-half acre used as a graveyard, in trust for the use and benefit of plaintiffs, and for a partition of said lands among the heirs of Rachel Groff, deceased.

The petition avers that on the 27th day of October, 1890, Elizabeth James and Rachel Groff, since deceased, and

then the wife of defendant, Josiah H. Groff, were the owners in fee simple as tenants in common of the lands aforesaid; that on said last mentioned day Elizabeth James and Rachel Groff, the defendant, the husband of the latter joining with her, sold and conveyed said lands to one C. Keck for $3,200; that said Keck paid $500 cash and executed for the remainder of the purchase money four notes for $500 each, due respectively in 1, 2, 3 and 4 years, and one note for $700, due in five years, all said notes being secured by deed of trust on the land sold to W. J. Fulks, as trustee, with power to sell in case of the non-payment of any of said notes. All said notes were payable to Elizabeth James and Rachel Groff, as payee; that soon after the sale of said land said J. H. Groff, his wife, Rachel, and Elizabeth James, removed to West Plains, Missouri, where they resided as one family; that said Keck paid the first $500 note and the interest, but failed to make any other or further payments, whereby all said notes became due and payable; that at that time, and for a long time thereafter, said Elizabeth James and Rachel Groff had implicit faith and confidence in the honesty and integrity of the defendant, J. H. Groff, and intrusted to him all their business transactions; that both said sisters were advanced in years, were without education and had no experience in business affairs; that after the maturity of the second note in October, 1892, said Keck having failed to pay said note, said J. H. Groff represented to his wife, Rachel, and her sister, Elizabeth James, that it was necessary in order to foreclose said deed of trust that they assign and transfer said notes to him; that thereupon said Groff did write an assignment of said notes to himself (and did sign the names of his wife Rachel) and her sister Elizabeth, thereto; that there was no consideration whatever for the assignment of said notes, and in truth and fact no such assignment was necessary; that thereupon, at the request of

James v. Groff.

said Groff, said trustee, W. J. Fulks, after duly advertising said lands, sold the same on January 7, 1893, and at said sale said land was bid in by said J. H. Groff at $1,000, that being the only bid made, and said Groff wrongfully caused the said trustee to execute a deed to him, thus vesting the legal title to said lands in himself; that said Groff did not pay his bid of $1,000, or any other sum except the cost of advertising said land, but caused the amount of said bid to be credited on the notes belonging to his wife Rachel, and her sister Elizabeth; that said Groff filed his deed for record in the recorder's office of said county, and the same is recorded in book 11, at page 193, and the same is here shown to the court, the original being in possession of said defendant; that afterwards said Groff concealed from his wife Rachel, and her sister Elizabeth, the fact that he had bid in said land in his own name, but falsely represented to them that the title to said land was vested in them just as it was prior to its sale by them to said Keck as aforesaid; that directly after the sale of said land, defendant Groff, his wife, and Elizabeth James returned to said farm, which they occupied together until the death of Rachel Groff on June 16, 1896; that said Rachel Groff died intestate, leaving as her heirs her husband or widower, J. H. Groff, and certain brothers and sisters, and the descendants of certain deceased brothers and sisters, to-wit:

1. William James, a brother.

2. (a) Sarah Hofmeier and (b) Polly Davis, the married daughters of Ann Graham, a deceased sister.

3. Lucy Raines, a sister.

4. The children of Edward B. James, a deceased brother, i. e.: (a) Stephen A. James; (b) John W. James; (c) Mary Houcks; (d) Furnace James; (e) Emma Warner, the daughter of Sarah James, deceased, who was a daughter of Edward B. James; (f) E. Frank James; (g) Grant James;

(h) Docia James; (i) Susan Walker, who had died, leaving three children, to wit, (1) Edward Walker, (2) Lena Walker and (3) Della Walker.

    5.   Elizabeth James, a sister.

    6.   Mahlon J. James, a brother.

    7.   Jane Birdsong, a sister.

    8.   Rebecca Cheek, a sister.

Wherefore by reason of the premises, plaintiffs allege and charge that defendant, J. H. Groff, has been guilty of misconduct, fraud and deception, and they pray that he be adjudged to hold said real estate as trustee for the use and benefit of the plaintiffs and defendants as herein set out, and that he be divested of all interest in said land except as heir of his wife, Rachel Groff.

Planitiffs pray for general relief.

"And plaintiffs for another and further cause of action, state: That on and prior to June 16, 1896, the plaintiff, Elizabeth James and one Rachel Groff were the equitable owners as tenants in common of the northeast quarter of section 8, township 43, range 15 in Moniteau county, Missouri, except about one-half acre in the southeast corner used as a graveyard; that the legal title to said land was vested in the defendant, J. H. Groff, as trustee, as fully set forth in the first count of this petition, who held the same in trust for the use of said Elizabeth and Rachel; that on said June 16, 1896, said Rachel Groff died intestate, leaving as heirs the following persons, to-wit:

    "1.   William James of Camden county, Mo., and

    2.   Mahlon J. James of Moniteau county, brothers.

    3.   Lucy Raines of Morgan county, Mo.

    4.   Elizabeth James, and

    5.   Jane Birdsong of Moniteau county, and

    6.   Rebecca Cheek of Sebastian county, Arkansas.

7. (1) Sarah Hofmeier and (2) Polly Davis, the daughters of Ann Graham, a deceased sister, whose residence when last heard from was at Leavenworth, Kansas.

8. The children and grandchildren of Edward B. James, a deceased brother: (1) Stephen A. James, (2) John W. James and (3) Mary Houcks of Henry county, Mo.; (4) Furnace James, (5) Martha James, (6) Grant James and (7) Docia Blankenship of Moniteau county; (8) Emma Warner, who was the daughter of Sarah James, a deceased daughter of Edward B. James of Jasper county, Mo.; (9) E. Frank James of California; and (10) the children of Susan Walker, a deceased daughter: (a) Edward Walker, (b) Lena Walker and (c) Della Walker who reside in the State of Texas.

"That said Furnace James is of unsound mind and appears as plaintiff by his guardian, S. A. James; that said Edward, Lena and Della Walker are minors; that said parties are interested and have title to said real estate as follows: The said J. H. Groff as heir of his said wife, Rachel, she having died without any child or any other descendants in being capable of inheriting, to one-half of the undivided one-half of said land, being one-fourth of the entire tract; Elizabeth James to an undivided one-half interest and one-eighth of one-fourth, being equal to a 17-32 interest; William James, Lucy Raines, Mahlon J. James, Jane Birdsong and Rebecca Cheek, each to an undivided 1-32 interest; Sarah Hofmeier and Polly Davis, jointly to a 1-32 interest, and separately to a 1-64 each; Stephen A. James, John W. James, Mary Houcks, Furnace James, E. Frank James, Martha James, Grant James and Docia Blankenship and Emma Warner, each to an undivided 1-320 interest; and

Edward Walker, Lena Walker and Della Walker, each to 1-960.

"That no other persons except the plaintiffs and defendants have any interest in said real estate.

"That from the number and diversity of interests it is impossible to divide said land in kind among the parties interested.

"The plaintiffs pray that guardians *ad litem* be appointed for the infant defendants, Edward Walker, Lena Walker and Della Walker.

"That on a hearing of the cause that judgment of partition be rendered herein, and that said real estate be sold and after payment of costs and expenses that the remainder be divided among the parties interested according to their several rights and interests."

The answer denies all fraud, concealment or trust relation and then fully states defendant's case as follows:

"This defendant for further answer states that on the 17th day of September, 1869, said Elizabeth James and her sister, Rachel James, who subsequently became the wife of this defendant, became the joint owners, as vendees of their father, John James, Sr., of the east half of northeast quarter of section 8, township 43, range 15, except one-half acre in branch bottom, the deed for which is recorded in deed book O, at page 316, and that on the 11th day of December, 1873, the said Elizabeth James and her said sister, Rachel, as vendees of their said father, became the joint owners of the west half of the northeast quarter of section 8, township 43, range 15, the deed for which is recorded in deed book R, page 274; and which is the same land described in the petition of the plaintiffs; [that prior to the 9th day of July, 1879, and in contemplation of a marriage between the said Rachel James and this defendant, it was stipulated and agreed between said Rachel James and this defendant that in consider-

James v. Groff.

ation that this defendant would marry the said Rachel, move on the farm above described, and take care of her and provide for her during her life she would immediately convey to this defendant an undivided one-half interest in said real estate; that in pursuance of said stipulation and agreement this defendant and said Rachel were legally married to each other on the 9th day of July, 1879; that he moved on to said farm, cultivated the same and provided for her to her entire satisfaction up to the time of her death; that some time after the marriage of this defendant to said Rachel James, this defendant and his said wife, in pursuance of said agreement, went to the town of High Point, before T. J. Hart, Esq., a justice of the peace for Moniteau county, for the purpose of having said deed executed, who informed them that he had no suitable blanks for the execution of same and said deed was not then executed.   This defendant further states that prior to the 9th day of July, 1879, it was agreed and stipulated between this defendant and the said Elizabeth James, that in consideration that this defendant would take care of and support her the said Elizabeth James during her natural life she also would convey to this defendant her undivided one-half interest in said real estate; that in pursuance of said agreement the said Elizabeth James, accompanied by her said sister, Rachel, and this defendant, went together to the town of High Point, before T. J. Hart, Esq., at the time a justice of the peace of Moniteau county, for the purpose of having said deed executed, who informed them that he had no suitable blanks for the execution of same and said deed from said Elizabeth to this defendant was not at that time executed.   This defendant further states that in pursuance of said arrangement with said Elizabeth James, the latter lived with the defendant and his wife Rachel, up to the time of the death of the latter, as one of the family, and has continued so to live as a member of defendant's family

up to the present time, less a brief interval on the death of her sister Rachel, occasioned by no fault upon the part of this defendant; that this defendant paid all the taxes on said land since the year 1879, claimed it as his with a full knowledge and consent of his said wife, Rachel Groff, during her life and of her sister, Elizabeth, cultivated it and improved it up to the 27th day of October, 1890, and by reason of the premises states that he thereby became the equitable owner thereof.]

"This defendant further states that on the 27th day of October, 1890, the said Elizabeth James, this defendant, and his wife, Rachel Groff, conveyed said real estate by warranty deed to one Christopher Keck for the sum of $3,200, paying in cash at the time the sum of $500 and executing his five notes for the remainder, all dated October 27th, 1890, as follows: One note for $500, payable in 12 months; one note for $500, payable in 2 years; one note for $500, payable in 3 years; one note for $500, payable in 4 years; one note for $700, payable in 5 years; all bearing interest at the rate of six per cent per annum, from the 27th of October, 1890, to be paid annually, and if the interest was not paid annually it was to become as principal and bear the same rate of interest, and all payable to Elizabeth James and Rachel Groff or order; that to secure the payment of said notes the said Christopher Keck on the said 27th day of October, 1890, executed a deed of trust on said land to W. J. Fulks, as trustee, for the benefit of this defendant, his wife Rachel, and said Elizabeth James, as beneficiaries, providing, 'That if the said parties of the first part or any one for them, shall well and truly pay off and discharge the debt and interest expressed in said notes and every part thereof, when the same becomes due and payable, according to the true tenor, date and effect of said notes, then this deed shall be void, and the property hereinbefore conveyed shall be released at the

cost of the said party of the first part, but should the said first parties fail or refuse to pay said debt or the said interest, or any part thereof, when the same or any part thereof shall become due and payable and this deed shall remain in force and the said party of the second part or in case of his absence, death, refusal to act, or disability in any wise, the then acting sheriff of Moniteau county, Missouri, at the request of the legal holder of the said notes, may proceed to sell the property hereinbefore described, or any part thereof, at public vendue, to the highest bidder, at the court house door in the city of California, Moniteau county, Missouri, for cash, first giving thirty days' public notice of the time, terms and place of sale, and of the property to be sold, by advertising in some newspaper printed and published in the city of California, and upon such sale shall execute and deliver a deed in fee simple of the property sold to the purchaser or purchasers thereof, and receive the proceeds of said sale, and any statement of facts or recital by the said trustee in relation to the non-payment of the money secured to be paid, the advertisement, sale, receipt of the money and the execution of the deed to the purchasers shall be received as *prima facie* evidence of such fact, and such trustee shall out of the proceeds of said sale pay: first, the costs and expenses of executing this trust, including legal compensation to the trustee for his services, and next he shall apply the proceeds remaining over to the payment of said debt and interest or so much thereof as remains unpaid, and the remainder, if any, shall be paid to the said parties of the first part or their legal representatives,' which deed of trust is here shown to the court.

"Defendant further states that a short time subsequently to the sale of said land to said Keck, he, with his family, including his wife, Rachel, and her sister, Elizabeth, removed to the town of West Plains, in the county of

Howell, Missouri, where he purchased property with a view of making it his permanent home; that after the maturity of the second note above described in October, 1892, and the failure of said Keck to pay the same, the said Rachel Groff and her sister, Elizabeth James, returned to Moniteau, for the purpose of collecting the same, but through the intermeddling of Mahlon J. James, one of the plaintiffs herein, said Keck refused to pay said note, and the said Rachel Groff and Elizabeth James returned to West Plains without being able to collect said note or any part thereof; that thereupon and without any solicitation, fraud, misconduct, concealment or misrepresentation upon the part of this defendant, the said Rachel Groff and Elizabeth James, for value received, transferred by indorsement on the back of said notes, signed by them, and delivered all of said notes to this defendant, who thereby became the legal owner and holder thereof; that thereupon he came to Moniteau county for the purpose of collecting said notes and failing to do so, requested said trustee, W. J. Fulks, to advertise and sell said land; that thereupon said trustee, W. J. Fulks, advertised said land in accordance with the request of this defendant and by virtue of the powers granted him in said deed of trust, offered said land for sale on Saturday, the 7th day of January, 1893, and this defendant being the highest and best bidder therefor became purchaser thereof at the sum of $1,000, and said land was stricken off and sold to him for that sum by said trustee, and thereupon said trustee, W. J. Fulks, on the 7th day of January, 1893, executed to this defendant a deed for same, duly signed, sealed and acknowledged and delivered said deed to this defendant on the said 7th day of January, 1893, who on the same day filed the same for record with the recorder of deeds of Moniteau county, and the same was duly recorded in deed book No. 11 at page 193, and which deed is here shown to the court,

and by virtue of which this defendant became the legal owner of said real estate. That on his return to West Plains he informed his said wife Rachel Groff, and her sister Elizabeth James, of his action in the premises and delivered to them, as the custodian of all his papers, the deed executed to him by said trustee, W. J. Fulks, without any concealment, fraud, deceit or misrepresentation, and the said Rachel Groff and her sister, Elizabeth James, expressed themselves as entirely satisfied with the action of the defendant in relation to said land and of the title acquired by him thereto. That subsequently to the purchase of said real estate by this defendant as aforesaid, he, with his wife, Rachel, and her sister Elizabeth James, moved back to Moniteau county, obtained possession of said land and lived thereon up to the death of this defendant's wife Rachel in June, 1896.

"This defendant further states that after his purchase of said land at said trustee's sale aforesaid, with the knowledge and approval of his wife Rachel, and her sister Elizabeth, he made valuable and lasting improvements thereon; that he erected a comfortable dwelling house, smoke house, cellar, corn crib, wagon shed, chicken houses, barn, had a well of living water bored, caused to be cleared 12 acres of new land, built new fences, paid the taxes thereon, and incurred other numerous expenses incident to the attempts to collect said notes, aggregating the sum of fifteen hundred dollars, in addition to the planting of numerous shade, fruit and ornamental trees, with the view of beautifying and embellishing their home and of rendering it comfortable for himself, wife and her sister Elizabeth, all of which improvements were made on said land since his said purchase under said deed of trust, with a full knowledge upon the part of his said wife Rachel and her sister Elizabeth; that he claimed to be the exclusive owner of said land and that he was making those improvements on said land while claiming to be

the exclusive owner thereof, and without any objection upon their part, and this defendant states that by reason of the promises his wife Rachel was, and the plaintiffs and his co-defendants now are, estopped from claiming any interests in said land either in their own right or as heirs of the said Rachel Groff, deceased.

"This defendant further states that in pursuance of her stipulation and agreement made with this defendant prior to July 9, 1879, on the 5th day of November, 1896, the said Elizabeth James conveyed to defendant all of her right, title and interest in and to said real estate by deed duly executed, signed, sealed, acknowledged and delivered, and which deed was filed for record in the office of the recorder of Moniteau county on the 7th day of November, 1896, and recorded in book 14, at page 84, and which deed is here shown to this court.

"Wherefore this defendant prays that by reason of the promises, the petition of the plaintiffs should be dismissed; that they be adjudged to pay the costs of this proceeding; that the defendant go hence without day, and that he have all other proper relief."

There was an answer for the minor heirs by their guardian *ad litem*, praying to have their interests protected, and a formal request by Elizabeth James to have her name stricken from the petition, signed by her attorney in fact.

The reply was in these words:

"And now comes the plaintiffs by their attorneys and for their replications to the answer of Josiah H. Groff, defendant, they deny each and every allegation in said answer except as hereinafter admitted; they admit the allegations in the answer as to those specific facts that said answer admits which are set out in the petition.

"They deny that there ever was any binding or valid contract between the defendant Groff and his late wife Rachel

Groff and the plaintiff Elizabeth James, whereby the said
Groff became legally and equitably entitled to the land in
controversy or that any such contract was made with either
of them.

"They admit that since the commencement of this suit
the defendant Groff has obtained from the plaintiff, Eliza-
beth James, a quitclaim deed for said lands, but they aver
that said deed was obtained by fraudulent representa-
tions made by the defendant, Josiah H. Groff, and one of his
sons, H. C. Groff, at his instigation, to said Elizabeth James,
and by undue influence obtained over her; that the same is
wholly without consideration and is only a part of the orig-
inal fraudulent scheme of said Groff to get the title of the
land in his own name and leave the said Elizabeth James a
pauper, and they aver that the said Elizabeth James has be-
come so old and feeble and her mind and memory is so im-
paired that she has been made the dupe and victim of the
fraudulent representations of the defendant Groff, who at
the time had an undue influence over her, and they pray this
court to assert its equity power and set aside all the pre-
tended contract under which the defendant Groff claims title
to the land in controversy and the deeds purporting to con-
vey the land to him and that he be divested of such title by
virtue thereof, and that the rights of these plaintiffs, especi-
ally the rights of the plaintiff, Elizabeth James, be protected
and for all proper relief."

The facts alleged as to the ownership of the lands and
the various conveyances are admitted by the pleadings.

The evidence established that Elizabeth James and
Rachel James prior and up to July, 1879, were joint owners
of the land in controversy, the same having been given to
them by their father and were occupying the same as their
homestead. Josiah Groff was at that time a widower with
five children, the eldest of whom, a daughter, was thirteen

years old, and the youngest about six. The four youngest children were boys. At that time he had no tangible property except a team and wagon. He declined to state what if anything else he had and for the purposes of this case, it must be conceded he did not disclose other property. In July, 1879, he married Rachel Groff. He brought his family to the home of his wife and her sister and they lived as one family on the proceeds of that farm.

As charged in the petition and admitted in the answer the plaintiff Elizabeth and Mrs. Groff sold this farm to one Keck for $3,200, receiving $500 cash and a deed of trust to secure the remainder of the purchase money. The notes for the balance were payable to Mrs. Groff and Elizabeth James. The first note for $500 was also paid at the end of the first year with interest.

The family, then consisting of defendant and his wife Rachel and Miss Elizabeth, removed to West Plains. The defendant received the purchase money belonging to his wife and Miss Elizabeth her own share.

They bought a house and lot in West Plains. Elizabeth testifies she loaned defendant $150 for that purpose, but he denies this. She held his note for $150 when this suit was commenced. Keck defaulted in the payment of the purchase money and in 1892 the defendant and the two sisters came back to Moniteau county to collect the second note and interest but failed. They returned to West Plains and the testimony shows that at Groff's suggestion the two sisters indorsed the notes to him for collection. Thereupon Groff returned to Moniteau county, caused the trustee to advertise the land for sale and at the sale bid it in in his own name and took the deed to himself and had his bid credited on the notes. The testimony is conflicting as to the knowledge plaintiff had of the execution of the deed to Groff. She positively denies that she knew of the deed till the summer of 1894. She learned of it through Miss Duval,

a neighbor.   She was much troubled and told her sister there had been "dirty work," but to avoid a family disturbance they let matters remain thus until Mrs. Groff died in 1896.

On their return to the farm in 1894, Groff had a new four room house erected on the land and enlarged the barn, and dug a new well and cistern, which said improvements the chancellor found were of the value of $750.   Elizabeth says she furnished $150 of the money for that purpose, and the testimony tends strongly to show she still regarded herself as a joint owner of the land, notwithstanding the deed to Groff.

The evidence tended to show very clearly that both Elizabeth and Rachel were illiterate women, with no business experience.   They could neither read nor write and signed their names by their marks.

After the death of her sister, Elizabeth remained a short time on the farm but the surroundings became unpleasant and she testifies Groff ordered her to leave the premises and she went to the home of her sister-in-law, Mrs. Susan James, and remained there until October,1896,  In the meantime she with her co-plaintiffs instituted this suit.   After the bringing of the suit, H. Clay Groff, a son of defendant, and a lawyer, returned from Montana, and made a visit to Miss Elizabeth.   She told him of her troubles and he expressed sympathy for her and offered to negotiate a settlement between her and his father.

She wanted to sell him her interest in the land, but he said he didn't have the money and asked what she would take and she said $1,200.   Clay advised her to go back and live with his father and suggested that his father should give her a bond for her support.   He told her her suit was brought wrong and she could not recover.   In her conversation with Clay she told him she wanted to visit her sister's grave.   She had never been to it.   He got a hack and took

her to the grave, and then drove to her old home where she visited the chicken yard, and went all about the place and seemed very happy.    Finally at his suggestion, she agreed to take a bond and give his father a quitclaim deed.

The circumstances attending the execution of the quitclaim deed and the bond for the support are, briefly, that defendant Groff sent his son, H. Clay Groff, for a justice of the peace to come to his, Groff's house.    There Groff dictated the writing of the papers, a quitclaim deed from Miss Elizabeth to Groff and the bond for her support.    Elizabeth said nothing further than to acknowledge the deed.    When the papers were drawn, the justice left them on the table and went home.    No sureties were present and no one had signed the bond except the defendant Groff.    At that time this suit was pending and neither her attorneys who represented her in this action nor her relatives or co-plaintiffs were notified of his effort to get the deed from her.    She testified she did not understand the transaction.    She acted under the advice of defendant's son, and had no disinterested friend or counsel to advise her and she was not asked or afforded an opportunity to consult any one before signing the papers.

The defendant says he went to California, the county seat, and had Mr. Burke prepare the power of attorney in evidence authorizing the dismissal of the suit.

Other facts will be noted in the discussion of the case.

I.    Preliminary to an investigation of the equities of the respective parties, we are called upon to determine whether a suit for partition can be maintained upon the facts disclosed in the petition and the evidence.

It will be noted that the first count in the petition is a bill in equity to have defendant declared a trustee for plaintiffs in holding the title to the lands in question.    While it has been uniformily ruled that a statutory partition could not be maintained when the defendant was in the actual adverse possession of the land sought to be partitioned (Hutson

v. Hutson, 139 Mo. 229) it is equally well settled that a court of equity will entertain a bill to partition an equitable estate wherein the legal title is held by the defendant and the equit- able title is in plaintiffs, even though the defendant trustee is in possession. The court having acquired jurisdiction of the cause may determine the whole controversy. [Holloway v. Holloway, 97 Mo. 628; Welch v. Anderson, 28 Mo. 299; Reed v. Robertson, 45 Mo. 580; Dameron v. Jamison, 71 Mo. 97; Hamilton v. Armstrong, 120 Mo. 597.]

That the evidence established that defendant took the legal title to the lands in trust for his wife and plaintiff Elizabeth James when he received the trustee's deed thereto does not admit of discussion. Their father had given them the land by deed in his lifetime. They had sold it to Keck and received Keck's notes payable to them. For collection only they assigned these notes to defendant. He gave noth- ing of value for them and does not pretend he did. When the land was sold he credited the bid $1,000 on their notes. He paid nothing whatever for the land. Having used notes of his wife and her sister to pay his bid, the title he took was theirs in equity and good conscience, and from that moment he held it in trust for them until the death of his wife. Granting that his wife indorsed the note to him, a fact which was not satisfactorily shown, that alone did not reduce said note into his possession in such a manner as to convey the title thereto to him. The mere blank indorse- ment fell short of that express assent of the wife required by the statute. [McGuire v. Allen, 108 Mo. 403; Winn v. Riley, 151 Mo. 61.]

Having once established this relation of trustee and *cestuis que trustent* between defendant and his wife and her sister, the burden of showing a subsequent valid acquisition of their interests therein devolved upon defendant.

As to his wife's share defendant was of course not a competent witness against her heirs, and the testimony

offered by him to prove an ante-nuptial contract to give him this land if he would marry her, was utterly wanting in clearness and probative effect. Indeed the conduct of the two sisters and defendant in subsequently selling the land, and taking the notes payable to the two sisters, each receiving her share of the cash payments, conclusively convince us there was no such agreement.

As to the acquiring of Elizabeth's share by the quitclaim deed executed subsequently to the commencement of this suit, the evidence fully sustains the chancellor in holding the deed was acquired by overreaching. It is quite obvious that this deed was obtained from this ignorant and illiterate old lady by defendant and his son by misrepresentation when she was without counsel or relatives to advise her. The scheme was well designed to obtain her patrimony by a promise of future support. It is impossible to read the testimony as to the making of this quitclaim deed without reaching the conclusion that Elizabeth James in her ignorance and lonely condition was the victim of the defendant and his son.

According to defendant's own testimony she was so infirm that his wife in her lifetime dressed and undressed her and put her in bed. The defendant was her brother-in-law; she had nursed his children; for more than ten years she had looked to him to do the trading for the family. After the death of her sister, she was left alone and when the son of defendant came to her and offered and gave her his sympathy and finally induced her to return to the old home after the visit to her sister's grave, and urged her to come back and advised her that her suit was improperly brought the step to the execution of the quitclaim was an easy one. She was thus without counsel induced to deed her interest in this land, amounting to 17-32 of the 160 acres, for the promise of a mere support for the remainder of her life.

Considering the relationship of the parties, the enfeebled body and illiterate mind of the plaintiff Elizabeth and the unjust advantage defendant had obtained by wronfully taking the trustee's deed himself and obtaining said quitclaim  deed without the knowledge of her counsel who were then prosecuting this suit, we have no hesitancy in affirming the decree of the circuit court and holding that said quitclaim deed was the result of an unconscionable bargain and the same was properly set aside and held no bar to her recovery in this suit.

As to the improvements made on the farm by defendant.  The circuit court found they were worth $750 and allowed defendant that sum.   Plaintiffs did not appeal from that finding and are therefore concluded by that finding so far as this appeal is concerned.

There was error in crediting the $750 with the $150 note of plaintiff Elizabeth.   There was no foundation for this in the pleadings.

The court can readily correct the decree so as to eliminate the finding as to the $150 note and the credit therefor. The decree in all other respects was proper and is affirmed, but so much thereof as credits the $150 note on the allowance for improvements is reversed.

The defendant will be allowed as costs on this appeal the docket fee of $10 but nothing for his transcript.

*Sherwood* and *Burgess, JJ.,* concur.