W. R. RODGERS *et al.*, *Appellants*, v. THE CITY OF OTTAWA *et al.*, *Appellees.*
No. 16,900.

W. R. RODGERS *et al.*, *Appellants*, v. THE CITY OF OTTAWA *et al.*, *Appellees.*
No. 16,903.

SYLLABUS BY THE COURT.

1. CITIES — *Street Improvements — Remonstrance by Property Owners—Time—Jurisdiction.* Section 1420 of the General Statutes of 1909, authorizing the city council of cities of the second class to improve streets and to levy special taxes in payment therefor, provided a majority of the resident owners of property liable to taxation therefor shall not within twenty days from the last publication of the resolution file their protest against such improvement, is interpreted to mean that the property owners have the full period in which to express their approval or disapproval; and if, after a majority have protested, and before the expiration of the twenty-day period the majority protesting become the minority by changes in the ownership of real estate, the council has power to proceed.

2. JUDGMENTS — *Motion for Temporary Injunction — Res Judicata.* Where the merits of a case are fully tried out in an application for a temporary injunction by the introduction of witnesses by both parties, and at the request of the parties the court makes separate findings of fact and conclusions of law denying the temporary injunction, and on the final hearing it is stipulated that the findings made at the time the temporary injunction was refused should stand as admitted

Rodgers v. Ottawa.

facts, *held*, that the court committed no error in holding the plaintiffs estopped from retrying issues of fact determined at the former hearing.

Appeals from Franklin district court. Opinion filed July 9, 1910. Affirmed.

*H. A. Richards*, and *W. S. Jenks*, for the appellants.
*F. A. Waddle*, for the appellees.

The opinion of the court was delivered by

PORTER, J.: This appeal involves the legality of proceedings for paving a street. The mayor and council of the city of Ottawa passed a resolution declaring it necessary to grade and curb Main street, in that city, from the north line of Tecumseh street to the south line of Wilson street. The resolution was duly published. In the forenoon of the 5th day of June, 1909, which was the last day after the publication in which property owners could remonstrate, the plaintiffs filed a protest with the city clerk signed by forty-five resident property owners liable to taxation on account of the improvement. At the time this protest was filed there were seventy-six resident owners of real estate liable for taxation for the improvement. On the afternoon of the same day conveyances were made by owners of real estate on either side of the street to be improved by which the number of resident owners of real estate liable for taxation for the improvement was increased to ninety-four. On the 16th day of June, 1909, the mayor and council in regular session determined that a majority of the resident owners had not, within the time provided by law, filed their protest against the improvement, and the council thereupon enacted an ordinance authorizing the improvement to be made.

This action was brought to enjoin the work and prevent the city from levying a tax to pay for the same. On the preliminary hearing the court made separate

12—83 KAN.

conclusions of fact and of law, and denied the temporary injunction. At the final hearing it was agreed that the findings made by the court upon the hearing for the temporary injunction should stand as admitted facts. Other evidence was introduced, and the court found for the defendants. From this judgment the plaintiffs appeal.

The first contention is that the filing of a protest by a majority of the resident property owners liable to taxation for the improvement ousts the city from jurisdiction the instant the protest is filed. There is no foundation in the statute for this contention. The statute provides:

"If a majority of the resident owners of property liable to taxation therefor shall not, within twenty days from such last publication, file with the clerk of said city their protest against such improvements, then such council shall have power to cause such work to be done or such improvements to be made, and to contract therefor, and to levy the taxes as herein provided." (Laws 1887, ch. 104, § 1, Gen. Stat. 1909, § 1420.)

Until the expiration of the twenty days the city possessed no power or jurisdiction to proceed, and therefore could not be prevented from acquiring jurisdiction until the expiration of the full period of twenty days. In *Clarke v. Lawrence,* 75 Kan. 26, the court used this language:

"If a majority of such real-property owners did not sign such protest the power to proceed existed; if a majority did sign the protest the power did not exist." (p. 30.)

The appellants rely upon the case of *Knopfi v. Roofing and Paving Co.,* 92 Mo. App. 279, decided by the Kansas City court of appeals, holding under a like statute in Missouri that the filing of a remonstrance by a majority ousts the jurisdiction of the council, that the withdrawal of remonstrances after such filing does not reconfer jurisdiction, and that subsequent proceedings of the council in the premises are void. The case, how-

Rodgers v. Ottawa.

ever, was overruled by the supreme court in affirming a decision of the St. Louis court of appeals (*City of Sedalia v. Montgomery*, [Mo. 1910] 127 S. W. 50), where the various reasons given by the two divisions of the court of appeals are reviewed, and the court holds that the statute does not confer jurisdiction on the council in the first instance, but only conditionally. In the opinion the court used this language:

"In other words, at this point the statute in effect says to the city council: You may make the improvements suggested by the resolution provided a majority of the abutting property owners are willing, and you may have ten days in which to ascertain that fact, and if at the end of that period there is not before you a remonstrance signed by a majority of the property owners you may infer that it meets their approval, and then, but not until then, your jurisdiction attaches. During that period, therefore, there is no power or jurisdiction either to annul or to be recreated." (p. 51.)

This we think is the true interpretation of the statute; and we hold that the property owners have the full period in which to express their approval or disapproval. After filing their remonstrances they could rightfully withdraw their names therefrom at any time before the expiration of the twenty-day period, and thereby express their approval, or, if before the expiration of the full period some of the real estate changed hands, so that the remonstrants thereby were reduced to a minority, the council would have jurisdiction to proceed. To the same effect is *Green v. Jersey City*, 42 N. J. Law, 565, where it was held that in reckoning the remonstrants all those presented after the proceeding is commenced, and up to and on the day fixed for hearing, are to be considered. A similar rule has been applied in an application for a liquor license (*Green v. Smith*, 111 Iowa, 183), in proceedings to vote aid to a railroad (*Noble et al. v. The City of Vincennes*, 42 Ind. 125), and in locating a county seat (*La Londe v. The Board of Supervisors of Barron County and others*, 80

Wis. 380). (See, also, *Black et al. v. Campbell et al.,* 112 Ind. 122.)

In *City of New Orleans v. Stewart,* 18 La. Ann. 710, it was held to be immaterial for the council or court to inquire into the motives which actuate the majority in expressing their approval or disapproval of the improvement.

At the trial the plaintiffs offered evidence to prove that a number of the deeds were not *bona fide* conveyances. An objection was interposed on the ground that the plaintiffs' were estopped by the proceedings on the hearing for a temporary injunction. The trial court heard the evidence, and afterward found as a conclusion of law that the plaintiffs were estopped by the former proceedings. It is claimed that this was error. It appears that the hearing for the temporary injunction was quite full and complete. The same questions were presented to the court, and the same character of evidence offered for the purpose of establishing the fact that some of the conveyances were not made in good faith. At the request of the parties the court made separate findings of fact and conclusions of law, the same as though the case had been tried upon its merits. One of the findings, which by the stipulation stands as an admitted fact, is that in none of the deeds conveying portions of the property after the protest was filed was there any agreement for a reconveyance or understanding between the grantors and grantees that the title should not pass. This amounts to a finding that the conveyances were in good faith. There was no error in holding the plaintiffs bound by the former proceedings. In *Comm'rs of Wilson Co. v. McIntosh,* 30 Kan. 234, it was held that the old rule that the decision made upon a motion is not *res judicata* "no longer obtains in its former strictness." (Syllabus.) It was said in the opinion:

"But why should not a decision upon a motion be as conclusive as that upon a trial? The reasons given are

that motions are often made in the hurry of a trial, and decided with comparatively little examination and consideration; that the decision can not be taken up for review; and that they are tried upon affidavits, rather than oral testimony. None of these reasons exists in the case at bar." (p. 237.)

So, in the present case, the reasons for the general rule do not exist. The merits of the questions were capable of being tried and were in fact tried upon the motion. Neither party was entitled to a jury, and the decision was one necessarily to be given by the court; and when determined on the motion could have been brought to this court directly for review.

It can not be said that the equities favor the plaintiffs. No appeal was taken from the order denying the temporary injunction, no stay of proceedings was asked, no supersedeas was given. The work of grading and paving the street has been completed, the tax ascertained and levied, and the bonds for the payment of the improvement have been issued and sold. Moreover, the plaintiffs were not averse to having the street paved, but disagreed with the council and other property owners as to the kind of pavement. At the same time their protest was made they filed another petition, requesting that the street be paved with macadam instead of brick, and arranged that it was not to be presented or acted upon by the council until after the protest had taken effect. They are thus in the inconsistent position of being remonstrants and petitioners at the same time. Now, after the improvement has enhanced the value of their property, it would be most inequitable to allow them to throw the burden of the improvement upon the city at large, unless, as they contend, the city council was wholly without jurisdiction in the premises from the moment the majority filed their protest. That such is not the reasonable interpretation of the statute is obvious. Let it be supposed that an hour after they filed the petition a resident

owner had died, and that his death cast the title of his property upon a large number of heirs: must the council, in reckoning the majority of resident owners on the 5th day of June, ignore these real owners and count those only who were owners when the protest was filed? The jurisdiction and authority of the council to proceed with the proposed improvement depend upon the conditions existing at the end of the statutory period, and not upon those existing at the instant the protest is filed.

It is insisted that the statute should be strictly construed so as not to permit a subdivision of property after a protest has been filed, thus increasing the number of property owners, because it would open the door to fraud and trickery. There is nothing in the language of the statute to prevent conveyances of property by the owners for the express purpose of affecting the jurisdiction of the council to make special improvements. So long as changes in ownership are actually made, the purpose for which they are made is not material. The situation is analogous to that where a person changes his residence from one state to another for the purpose of thereby giving jurisdiction in a controversy to the federal courts. The motive or purpose which actuated him in changing his residence is not material, if he make an actual change.

The judgment is affirmed.