SHARUM v. CITY OF MUSKOGEE *et al.*

No. 4922.   Opinion Filed April 14, 1914.

Rehearing Denied June 2, 1914.

(141 Pac. 22.)

1.  **APPEAL AND ERROR—Review—Rights of Defendant in Error.**
    A party who does not appeal or file a cross-petition in error
    in a proceeding in error commenced by other parties to the
    action cannot be heard to question the sufficiency of the judg-
    ment rendered below, but must be deemed satisfied therewith.

2.  **MUNICIPAL CORPORATIONS—Assessment for Public Improve-
    ments—Competency to Sign Protest.**   A person having an in-
    choate title to certain town lots by virtue of having them
    scheduled to him by the town-site commission under sections
    12, 13, 14, 15, and 16 of the original agreement (March 1, 1901,
    31 St. at L. 861) which in due course ripens into a complete
    ·and absolute title, has a right to see that no illegal assessment
    for public improvements shall be imposed upon said lots, and,
    in the exercise of such right, may sign the protest against such
    improvement provided for by section 616, Rev. Laws 1910.

3.  **SAME—Public Improvements—Protest—Effect.**   Where the own-
    ers of more than one-half in area of the land liable to assess-
    ment to pay for paving a street in a city of the first class pro-
    test in writing against such improvement within fifteen days
    after the last publication of the resolution of necessity, as re-
    quired by section 616; Rev. Laws 1910, the mayor and city
    council of said city are deprived of the power to cause such
    improvement to be made, and to contract therefor, and to levy
    assessment for the payment thereof, and that power cannot
    be restored by withdrawals from such protest sufficient to re-
    duce the number of protestants below the number required by
    statute subsequent to the time within which such protest is
    required to be filed.

4.  **SAME—Assessment for Public Improvements—Right to Enjoin
    Enforcement.**   Where it appears that an assessment for street
    paving is sought to be enforced against a property owner
    which is made up of different items or elements all blended to-
    gether, some of which are illegal and others legal, the prop-
    erty owner may resist the payment of the whole assessment,
    in the absence of some statute which modifies the general
    rule.

5.  **SAME—Paving Assessment.**   A property owner is entitled to
    relief in a court of equity against an assessment for public
    improvements void for the reason that the assessment sought
    to be enforced is made up of different items or elements all

blended together, some of which are illegal and others legal, when such suit is commenced not more than 60 days after the passage of the ordinance making such final assessment, as provided by section 644, Rev. Laws 1910.

6.    SAME—Estoppel. Record examined, and held, that the doctrine of estoppel in pais is not applicable to the facts disclosed.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*
*R. C. Allen, Judge.*

Injunction by A. H. Sharum against the City of Muskogee, a municipal corporation, and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*Benj. B. Wheeler,* for plaintiff in error.

*S. V. O'Hare, James C. Davis,* and *Clark J. Tisdel,* for defendants in error.

KANE, C. J. This is a suit in equity, commenced by the plaintiff in error, plaintiff below, to enjoin the enforcement of a special assessment levied against his property in payment for paving certain streets situated in street improvement district No. 122, in the city of Muskogee. The defendants below, defendants in error herein, were the city of Muskogee, its duly elected municipal officers charged with the power and duty of providing for such improvements, and the firm of contractors to whom the contract for the improvement was awarded. The court below granted part of the relief prayed for, whereupon the plaintiff commenced this proceeding in error, contending that he is entitled to injunctive relief from the entire assessment. The defendants have not taken a cross-appeal from the part of the judgment adverse to them, and have not filed a cross-petition in error. They contend, however, that, notwithstanding their failure to prosecute a proceeding in error from the part of the judgment of the trial court which was unfavorable to them, and to file a cross-petition in error in this court, they are entitled to have the action of the trial court in their behalf reviewed, because, they say, "the plaintiff, by taking a

general appeal to this court from the entire decree rendered by
Judge Allen, has opened the entire record for the considera-
tion of this court." The rule seems to be otherwise, not only
in this jurisdiction, but in practically all the states having Codes
similar to ours, which abolish the distinctions between actions
at law and suits in equity. The authorities are to the effect
that a party who does not appeal or file a cross-petition in error
in a proceeding in error commenced by other parties to the
action cannot be heard to question the sufficiency of the judg-
ment rendered below, but must be deemed satisfied therewith.
*Turner v. Mills,* 22 Okla. 1, 97 Pac. 558; *Hume v. Brown
Shoe Co.,* 33 Okla. 634, 126 Pac. 823; *Missouri Pac. Ry. Co.
v. Lea,* 47 Kan. 268, 27 Pac. 987; *Cox v. Stokes,* 156 N. Y.
491, 51 N. E. 316; *James v. Groff,* 157 Mo. 402, 57 S. W.
1081; *In re Stumpenhousen's Estate,* 108 Iowa, 555, 79 N. W.
376; *Winningham v. Philbrick,* 56 Wash. 38, 105 Pac. 144;
*Garibaldi v. Grillo,* 17 Cal. App. 540, 120 Pac. 425; *Burleigh
v. Hecht,* 22 S. D. 301, 117 N. W. 367; *McCoy v. Crossfield,*
54 Ore. 591, 104 Pac. 423; *May v. Gates,* 137 Mass. 389; *Kern
Oil Co. v. Crawford,* 143 Cal. 298, 76 Pac. 1111, 3 L. R. A.
(N. S.) 993. However, as we find it necessary to review the
action of the trial court in relation to the part of the assess-
ment held to be void, in connection with one of the questions
presented for review by the plaintiff in error, and as we find
the same to be without error, the foregoing contention becomes
unimportant, in so far as the defendants are concerned.

The public improvement herein involved was being prose-
cuted by virtue of chapter 14, art. 5, Comp. Laws 1909. Chap-
ter 10, art. 12, Rev. Laws 1910. The general rules applicable
to the interpretation of the public improvement laws have been
so often reiterated by this court in the numerous cases involv-
ing special assessments that have from time to time been be-
fore us that we will not attempt to restate them here, but
will proceed directly to examine as well as we can the specific
defects which it is alleged invalidate the present assessment.

The street improvement law (chapter 10, *supra*) gener-
ally empowers the mayor and council of any city to permanently

improve any street, avenue, lane, or alley thereof by paving the same. Section 608. Section 615 provides, in effect, that, when the mayor and city council shall deem it necessary to pave, or otherwise improve, any street, they shall require the city engineer to prepare complete and accurate specifications and estimates, which upon approval by the mayor and council he shall file with the city clerk; whereupon said mayor and council shall by resolution declare such work or improvement necessary to be done, and that said resolution shall be published in six consecutive issues of a daily newspaper, or two consecutive issues of a weekly newspaper published and having a general circulation within said city. Section 616 provides:

"If the owners of more than one-half in area of the land liable to assessment to pay for such improvement shall not, within fifteen days after the last publication of such resolution, file with the clerk of said city their protest in writing against such improvement, then the mayor and council shall have power to cause such improvement to be made and to contract therefor, and to levy assessment for the payment thereof. * * *"

The trial court found, and correctly, we think, that on the 21st day of November, 1910, the city duly passed a resolution of intention to pave Hartford avenue from the east line of Eleventh street to the east line of Fourteenth street; and on the 31st day of January, 1911, a resolution to the same effect, relative to Georgetown avenue, from the west line of Eleventh street to the east line of Fourteenth street; and that on the 27th day of March, 1911, a resolution to the same effect, relating to Thirteenth street from the south line of Elgin avenue to the north line of Hartford avenue. In these various resolutions of necessity is embraced all the property involved in this proceeding; and, for the purpose of this case, we will assume that thus far all the steps taken have been in all respects regular and in accordance with law. The trial court also found that, pursuant to section 616, *supra,* owners of more than one-half in area of the land liable to assessment to pay for the improvement embraced within the resolution of necessity passed on the 27th day of March, 1911, to wit, Thirteenth

street from the south line of Elgin avenue to the north line of Hartford avenue, did file with the clerk of said city a protest in writing against such improvement; and that thereafter, on the 17th day of June, 1911, one of the protestants, Robert Wrigley, without whose signature the protest would not have the requisite number of signers, signed a withdrawal of his protest. Upon the foregoing finding of fact the trial court made the following conclusions of law:

"That, since the owners of more than one-half in area of the land liable to assessment to pay for the improvement of Thirteenth street, as provided by the resolution adopted by council of defendant city on March 27, 1911, filed their protests in writing against such improvement within fifteen days after the last publication of such resolution, as provided by section 723 of Snyder's Compiled Laws of Oklahoma 1909, which said protests remained on file until after April 21, 1911, being the last day for filing protests, the council of defendant city failed to obtain jurisdiction over the said street for the purpose of improving the same, and was, after said April 21, 1911, without jurisdiction to proceed with the paving or otherwise improving of said Thirteenth street from the south line of Elgin avenue to the north line of Hartford avenue, and all subsequent resolutions, notices, contracts, ordinances, or other actions of council of defendant city, relating to the improvement of said Thirteenth street, were null and void, were without authority of law and of no effect, and are not binding upon plaintiff's property hereinabove described; and the assessments made against plaintiff's property in pursuance thereof are illegal, null, and void, and should be removed as a cloud upon plaintiff's property."

It seems to be conceded that generally the filing of the protest is sufficient to put an end to the power of the city authorities to proceed with the part of the improvement against which the protest was filed; but, say counsel on this point, the protest of the plaintiff herein is ineffective, because: (1) He was not the owner of the property for which he protested; and (2) even though the protest was effective when filed, the withdrawal of Mr. Wrigley had the effect of reviving the suspended jurisdiction, and thereafter the council was free to proceed with the improvement. The trial court found the pro-

testants' title to the land sufficient to entitle them to file the protest, and in this conclusion we concur. The lots had been scheduled to the protestants by the town-site commission under sections 12, 13, 14, 15, and 16 of the original agreement (31 St. at L. 861), and the evidence offered tended to show that the title thus initiated finally in due course ripened into a perfect title. It also appears that the protestants had been in the uninterrupted and exclusive possession of the lots since the year 1901, claiming them as their own, and that they had paid all taxes and other public charges assessed against them.

In *Gilmore v. Norton*, 10 Kan. 491, it was held:

"In an action brought to restrain the collection of certain assessments for street improvements in a city of the second class, by persons who claim to be the owners of the lots assessed, evidence to the effect that 'the said claimants have openly and notoriously claimed said lots for four years past, have, during all of that time, taken persons upon said lots, and offered to sell the same to them, having, during all that time, given in said lots to the assessor as their own, and paid the taxes on them, and that said lots are uninclosed, and no improvements have ever been made on them,' is competent, as tending to show that the plaintiffs had sufficient interest in the lots to maintain the action."

In discussing this proposition, Mr. Justice Valentine says:

"But, even if it were shown that the plaintiffs had no title to the lots, still, as they were in possession of the property, exercising acts of ownership over it, and claiming it to be their own, they had an inchoate title that would in time, under the statute of limitations, ripen into a complete and absolute title. And evidently, while this inchoate and incomplete title to said lots is growing into a complete and absolute title, the plaintiffs ought to have a right to see that no illegal tax or assessment should be imposed upon said lots to eventually override and overthrow their own inchoate title."

There seems to be some authority to the effect that withdrawals from a protest against a street improvement sufficient to reduce the number of protestants below the number required by statute, subsequent to the time within which such protest is required to be filed is sufficient to revive the jurisdiction of the city authorities to proceed in the premises which was lost

or suspended by filing the protest. *City of New Orleans v. Stewart,* 18 La. Ann. 710. But the great weight of authority based upon statutes similar to our own is to the effect that the withdrawal from a protest after the expiration of the time for filing the same is ineffective to restore to the council the power to proceed. The following cases support the latter doctrine: *Jersey City Brewery Co. v. Jersey City,* 42 N. J. Law, 575; *Venderbeck v. Jersey City,* 44 N. J. Law, 626; *Roebling v. Trenton,* 58 N. J. Law, 40, 32 Atl. 685. In the latter case, which is fairly illustrative of all, it was held:

"After persons assessed for the cost of a street improvement sign and file a remonstrance in accordance with the eighty-third section of the charter of the city of Trenton, the city is deprived of the power to proceed and enforce the payment of the assessment, and that power cannot be restored by the attempted withdrawal by the persons assessed of their names from the remonstrance."

See *Wilson v. Borough of Collingswood,* 80 N. J. Law, 626, 77 Atl. 1033; *Armstrong v. Ogden City,* 12 Utah, 476, 43 Pac. 119; *Ogden City v. Armstrong,* 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444; *Sedalia v. Montgomery,* 227 Mo. 1, 88 S. W. 1014, 127 S. W. 50; *Rodgers v. City of Ottawa,* 83 Kan. 176, 109 Pac. 765; *In re Hinchman et al.,* 156 Ind. 476, 60 N. E. 36; *Sauntman v. Maxwell,* 154 Ind. 114, 54 N. E. 397.

It seems that Mr. Wrigley attempted to withdraw his name from the protest on the 17th day of June, 1911, some 60 days after signing the same, and on the 20th day of June, 1911, the city, pursuant to section 615, *supra,* adopted a resolution providing for the improvement of the unpaved portions of Georgetown avenue from the east line of Tenth street to the east line of Fourteenth street, Thirteenth street from the south line of Elgin avenue to the north line of Hartford avenue, Hartford avenue from the east line of Eleventh street to the east line of Fourteenth street, wherein, after finding that the various resolutions of necessity heretofore mentioned had been duly adopted and published, and that no protest in writing against such improvements had beeen filed with the city clerk, the

city council resolved to proceed with the work, and the city clerk was directed to advertise according to law to receive proposals or bids by contractors for furnishing materials and performing the work necessary in making said improvements. It will be noted that this resolution joins in one paving district all the improvements embraced in the several resolutions of necessity above referred to, among them the one against which the protest had been filed, which, it has been held, deprived the city council of jurisdiction to proceed with that particular improvement.

It is now contended that this resolution and the contract made pursuant thereto are illegal and void, for the reason that the blending together of the legal and the illegal improvements in one resolution and contract invalidated the whole proceeding. The rule seems to be that, where it appears that the tax or assessment sought to be enforced against the property owner is made up of different items or elements all blended together, some of which are illegal and others legal, he may resist the payment of the whole, in the absence of some statute which modifies the general rule. *Poth v. Mayor,* 151 N. Y. 16, 45 N. E. 372; *Bloomington v. Reeves,* 177 Ill. 161, 52 N. E. 278; *Fay v. Reed,* 128 Cal. 357, 60 Pac. 927; *Bay Rock Co. v. Bell,* 133 Cal. 150, 65 Pac. 299; *Piedmont Pav. Co. v. Allman,* 136 Cal. 88, 68 Pac. 493; *Partridge v. Lucas,* 99 Cal. 519, 33 Pac. 1082; *McAllister v. City of Tacoma,* 9 Wash. 272, 37 Pac. 447, 658; *City of Chicago v. Nodeck,* 202 Ill. 257, 67 N. E. 39.

It is true that the municipal improvement laws of the states wherein the foregoing cases arose are not identical with one another, or with the laws of this state, but there is sufficient similarity between them all to warrant their citation as authority for the establishment of a general rule applicable to a situation which may very well arise in any public improvement case. Indeed, unlike most of the general rules applicable to cases growing out of the assessment of private property for the payment of municipal improvements, this is about the only one upon which the courts seem to be in entire agreement. In

reaching the foregoing conclusion we are not unmindful of the rule that, if a provision relating to one subject be void, and as to another valid, and the two are not necessarily or inseparably connected, it may be enforced as to the valid portion as if the void part had been omitted. *Wilbur v. City of Springfield,* 123 Ill. 395, 14 N. E. 871. But, where the act or thing provided for is indivisible, as in the case at bar, if void in part, it must fail as a whole. The indivisibility of the illegal and legal parts of the present proceeding is strikingly illustrated by the difficulty the trial court experienced in attempting to adjust the assessment to fit the condition created by declaring part of the proceeding to be legal and part void, and sustaining the valid part. It seems that the intersection of Georgetown avenue and Thirteenth street is, in fact, a part of Thirteenth street, against the improvement of which the protest was filed. The court, in attempting to adjust the assessment made by the appraisers, was compelled to include this intersection in the Georgetown avenue improvement, which he held to be legal.

The New York Court of Appeals in the *Matter of the New York Protestant Episcopal Public School,* 75 N. Y. 324, upon being urged to do what the trial court did in the instant case, says:

"The court would occupy the position of the assessors, and the assessment would be according to its judgment, instead of the judgment of the assessors."

It seems that immediately upon the execution of the contract, made pursuant to the resolution last under discussion, the contractors entered upon the construction of the work therein provided for, and, after having built a large amount of curb and gutter excavation, concrete base, and other improvements, they discovered that they could not market the bonds to be issued in payment for the work done under said contract; for the reason that the specifications upon which the bid of July 11, 1911, was made contained a clause prohibiting the contractor from employing alien or unnaturalized foreign labor in the construction of said improvement. The contractors requested

the mayor and city council "to again advertise said districts for letting." In compliance with this request, on the 18th day of October, 1911, the mayor and city council proceeded to relet the contract by adopting· a resolution similar to the one last under discussion, wherein they omitted the clause prohibiting the contractor from employing foreign or alien unnaturalized labor in the construction of said improvement, but included Thirteenth street from the south line of Elgin avenue to the north line of Hartford avenue, the part held to be illegal; and the contract entered pursuant to this resolution also provided for the improvement of Thirteenth·street, against which the remonstrance had been filed. Of course, in such circumstances, what we have already said concerning the former resolution and contract also applies to the latter resolution and contract. Having reached the conclusion that the last resolution and the contract entered into in pursuance thereof are void, it is not necessary to notice any of the many other grounds of complaint urged against this special assessment proceeding by counsel for plaintiff in error.

On behalf of the defendants in error it is contended: (1) This is a collateral attack, and must fail, because the action of the city council in approving the appraisers' report is a judicial act, and should not be interfered with by the courts except for jurisdictional defects, the determination of the council being conclusive in the absence of fraud; and (2) the doctrine of estoppel *in pais* is held by the great weight of authority to apply to local assessments. A property owner who stands by and sees an improvement proceeded with without objection, knowing that the same is illegal, will be deemed, when he seeeks relief in equity, to have ratified the acts of the council and the contractors, and be estopped to assert any illegality or irregularity in regard thereto. We think the defect hereinbefore noticed is cognizable in a court of equity where the suit to set aside the assessment is "commenced not more than sixty days after the passage of the ordinance making such final assessment." Section 644, Rev. Laws 1910. If it is not cognizable in a court of equity, there is no tribunal provided by law to which that question may be presented. The

protest provided for by section 616, *supra,* is only available to
the owners of more than one-half in area of the land liable
to assessment, and the objections to the report of the apprais-
ers provided for by section 628 go only to the correctness of
the appraisement and apportionment as to any lots or tracts
of land involved. Certainly it was not contemplated that the
legality of a resolution or the validity of a contract made pur-
suant thereto are to be determined under either of those heads.

This court has repeatedly held that, where jurisdiction is
conferred upon a municipal body to provide for paving its streets,
and charge the cost thereof against the property benefited, ac-
cording to the method provided by law, a property owner who
stands by while such work is being prosecuted, with full knowl-
edge that large expenditures are being made for such improve-
ment which will benefit his property, or, upon due notice, fails
to appear at the proper time and before the tribunal prescribed
by law, and present his objections, if he have any, will not,
after the work is completed, be afforded relief by injunction
against assessments levied against the property benefited to pay
for such work. *City of Perry v. Davis et al.,* 18 Okla. 458,
90 Pac. 865; *Kerker v. Bocher,* 20 Okla. 729, 95 Pac. 981;
*Paulsen v. City of El Reno,* 22 Okla. 734, 98 Pac. 958; *Jen-
kins v. Oklahoma City et al.,* 27 Okla. 230, 111 Pac. 941; *Lon-
singer v. Ponca City,* 27 Okla. 397, 112 Pac. 1006; *Weaver v.
City of Chickasha,* 36 Okla. 226, 128 Pac. 305; *Shultz v. Rit-
terbusch,* 38 Okla. 478, 134 Pac. 961; *City of Muskogee et al.
v. Rambo et al.,* 40 Okla. 672, 138 Pac. 567; *City of Bartles-
ville v. Holm et al.,* 40 Okla. 467, 139 Pac. 273.

But we do not think the instant case falls within the
rule. The record discloses that the property owner herein pro-
tested against the part of the improvement, and filed objec-
tions to the report of the appraisers, wherein he set forth prac-
tically all the objections that he now raises, and filed this suit
within 60 days after the passage of the ordinance making the
final assessment. These were all the legal objections that were
available. Besides this, the evidence shows that, between the

letting of the contract pursuant to the first resolution and subsequent reletting, the plaintiff was upon the work some 25 times and, as he says:

"I inquired often for the boss, and they would point out the partner to me, and I would talk to him and tell him that they were not going to get any pay for it and argue with him and go by and aggravate him."

We know of no case—and none has been called to our attention—wherein the rule of estoppel in such circumstances has been applied. Generally we favor the rule that, where objections to a meritorious assessment levied to pay the cost of public improvements are purely technical, the court should not be astute to find means of setting aside the assessment after the work has been completed; but, on the other hand, if the contractor persists in proceeding with the work, knowing of the serious defects hereinbefore pointed out, and in the face of the active and persistent objections by the property owners, the court should not hesitate to set aside the assessment, where it appears that the law under which the improvement was made was not substantially complied with.

For the reasons stated, the judgment of the court below is reversed and remanded, with directions to proceed in accordance with the views herein expressed.

All the Justices concur.