## Case No. 7,816.

### In re KINGSBURY et al.

[3 N. B. R. 317 (Quarto, 84).] [1]

District Court. N. D. New York. Oct. 30, 1869.

BANKRUPTCY—PROOF OF DEBT—PREFERENCE—FRAUD.

1. Bankrupts owed about ten thousand dollars on ten promissory notes given to creditor at one transaction, and subsequently became unable to pay their debts in the ordinary course of business, as men usually do. Creditor having reason to believe this pressed his claim, and (1) received an account from debtors against a third party to collect and apply on the indebtedness; (2) gave another party an order on the debtors for money, part of which they paid, to apply on the indebtedness; (3) obtained and received goods from the debtors to be applied in like manner; (3) indorsed the several sums so received, on three of the notes, as of a date different from that on which the indorsement was made and the amounts received, and (5) failed to surrender the property and money so received to the assignee in bankruptcy. Creditor sought to prove claim in bankruptcy for the balance of the indebtedness. *Held*, that proof of debt be disallowed. The creditor received a preference contrary to the provisions of the bankruptcy statute.

[Cited in Re Jacobs, Case No. 7,159.]

2. An act which the bankruptcy statute declares shall be prima facie evidence of fraud, must be deemed to be contrary to its provisions, unless the presumption is repelled by opposing proofs.

[Cited in Walbrun v. Babbitt. 16 Wall. (83 U. S.) 577; Martin v. Toof, Case No. 9,167.]

3. Where a creditor has before him what the statute declares shall be prima facie evidence of fraud, he must, in law, be deemed to have reasonable cause to believe the existence of such fraud, until the legal presumption is overborne by opposing evidence.

4. The said payments not having been applied at the time on any or either of the said ten notes, the creditor cannot avoid the effect of accepting the preference by a subsequent indorsement on three of the notes. The preference was made on creditor's debt as an entirety.

[Cited in Re Aspinwall, 11 Fed. 138.]

[In the matter of Andria M. Kingsbury, Willis G. Abbott, and Philip A. Hale, bankrupts.]

Geo. Gorman, for assignee.
N. B. Smith, for Rider.

---

[1] [Reprinted by permission.]

HALL, District Judge. The assignee in this case having opposed the allowance of the claim sought to be proved by Nehemiah C. Rider, a creditor of said bankrupt, the proofs already taken in regard to such claim, were referred to Wm. H. Comstock, one of the registers in bankruptcy, with directions to take further proofs, and to report his opinion upon all the evidence in respect to such claim. The register having taken the proofs offered by the parties litigant made his report, stating that he had heard and read all the proofs, and found as matter of fact: First. That N. C. Rider now holds, and has continued to hold, since the spring of 1866, ten notes, made and given by these debtors to him at one and the same time, growing out of one and the same transaction, to wit: the sale by him to them of his interest in their co-partnership concern, which notes amount to about ten thousand dollars. Second. That during the latter part of January, 1868, said Rider obtained and received from the debtors, their account of nine hundred and ninety-six dollars and nineteen cents. against one Winston, of Syracuse, to collect and apply on this indebtedness; that he settled this account and took Winston's note, dated January 22d, 1868; that at about this time he gave Porter T. Swan an order on these debtors for about sixteen hundred dollars; that they paid nine hundred dollars upon said order, to apply on this indebtedness; that on the last days of January, or the first days of February, 1868, he obtained and received goods from these debtors valued at four hundred and twenty dollars, to apply on this indebtedness. Third. That said Rider indorsed these several sums so obtained and received from these debtors, as payments on three of said notes, and dated each of the indorsements January 15, 1868; that the actual time of making the indorsements was not on the 15th day of January, 1868; that they were all made at one and the same time, and not until after the said goods were received. Fourth. That during this time said Rider was at the office of these debtors, and talked with Mr. Hale (one of these debtors), and Mr. W. W. Smith, their confidential clerk, about their business affairs, and learned that these debtors were unable to pay their debts as fast as they became due, and offered to find a man to buy their retail store, if they would turn out the avails thereof to him on this indebtedness. Fifth. That about the same time he received said goods, to apply on this indebtedness, he commenced a suit in the supreme court of the state of New York against these debtors for the balance of this claim. Sixth. That said Rider has not surrendered the property, money, and goods so obtained and received of said debtors, to the assignee in this matter. Having found and reported these facts, the register also reported his opinion. "that said N. C. Rider, in obtaining and receiving the said account, money, and goods, thereby accepted a preference, having reasonable cause to believe that the same was given by those debtors contrary to the provisions of the bankrupt act [of 1867 (14 Stat. 517)]; and he, not having surrendered to the assignee the property, money, and benefits received by him under this preference, is not entitled to receive any dividend."

No exceptions to this report have been filed by the creditor, but as the questions presented have been argued upon the merits, I have read the testimony, and considered the questions of fact and law presented. The conclusions of fact stated by the register appear to be sustained by the evidence, and there is no doubt but that Rider obtained and received a preference, in the manner stated, having not only reasonable, but most abundant cause to believe that the bankrupts were then insolvent, and that, in giving such preference, they were acting with a knowledge of their insolvency. The sections of the bankrupt act which bear directly upon the questions now presented, are the 23d, the 29th, the 35th, and the 39th. The 23d section, among other things, provides in substance, that any person who, after the approval of this act, shall have accepted any preference, having reasonable cause to believe that the same was made or given by the debtor, contrary to any provision of this act, shall not prove the debt or claim on account of which the preference was made or given, nor shall he receive any dividend therefrom, until he shall first have surrendered to the assignee all property, money, benefit, or advantages received by him under such preference. The 29th section provides, among other things, that no discharge shall be granted to a bankrupt who has given any fraudulent preference contrary to the provisions of this act, or made any fraudulent payment, transfer, conveyance, or assignment of any part of his property. The 35th section, among other things, provides that if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property. either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance, is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited; and if any person, being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale,

assignment, transfer, conveyance, or other disposition of any part of his property, to any person who then had reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, sale, assignment, transfer, or other conveyance, is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer, or conveyance, shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt; and if such sale, assignment, transfer, or conveyance, is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud. The 39th section provides in substance (among other things), that it shall be an act of bankruptcy if any one, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall make any payment, sale, conveyance, or transfer of money or other property, rights, or credits, with intent to give a preference to one or more of his creditors, or with the intent, by such disposition of his property, to defeat or delay the operation of the bankrupt act; and that if such person shall be adjudged a bankrupt, the assignee may recover back such money, property, etc., provided the person receiving such payment, etc., had reasonable cause to believe that a fraud on this act was intended, and that the debtor was insolvent; and such creditor shall not be allowed to prove his debt in bankruptcy.

Under the proofs in this case, it is clear that the debtors, at the time Rider received a preference as stated, were entirely unable to pay their debts in the ordinary course of business, as men in trade usually do; and that this was well known to Rider. Such inability was insolvency, within the meaning of that term, as used in the bankrupt act. Thompson v. Thompson, 4 Cush. 127; Lee v. Kilburn, 3 Gray, 594; Spratt v. Hobhouse. 4 Bing. 173; 2 Kent, Comm. 389; Merchants' Nat. Bank v. Truax [Case No. 9.451]; In re Black [Id. 1,457]. Indeed, it is certain that the bankrupts must then have been so deeply insolvent that they could not, upon a final winding up and settlement of their affairs, within any reasonable time, and under the most favorable circumstances, have paid their debts in full, and Rider had sufficient cause to put him upon inquiry, even if he had not sufficient cause to believe that such was their condition. Under such circumstances, it would require strong proof to repel the legal presumption that the payments made by the turning out of an account for nearly one thousand dollars —the payment through the order in favor of Swan of about nine hundred dollars in goods, on the order, and the payment of four hundred and twenty dollars to be applied on the order

—not to Swan, but to Rider, who drew it— and which necessarily and obviously had the effect of giving a preference to Rider, were not intended to have that effect. No such proof has been given, and it must be held that such intention existed. This preference was accepted by Rider, and under the 23d section of the bankrupt act his debt cannot be proved if he had reason to believe that such preference was given contrary to any provision of that act; and it can hardly be doubted that such preference must be held contrary to some of the provisions of the 29th, 35th, and 39th sections. The sale and transfer of the property, especially of the account of nine hundred and ninety-six dollars and nineteen cents, was not in the ordinary course of business, and therefore prima facie fraudulent under the provisions of the 35th section of the bankrupt act, and therefore necessarily contrary to its provisions. But the general scope and purpose, and general provisions of the bankrupt act as the foundation of a system of bankruptcy, should be considered in determining whether any act of a debtor or creditor is contrary to the provisions of the bankrupt law.

The policy and purpose of bankrupt laws are to compel an equal distribution of the assets of the bankrupt among all his creditors. Hence, when he has shown his inability to meet his engagements, one creditor cannot, by collusion with him, or by a race of diligence, obtain a preference to the injury of others. Such conduct is a fraud upon the act, which is intended to secure an equal or pro rata division of his assets. Shawhan v. Wherritt, 7 How. [48 U. S.] 627–644; Ogden v. Jackson, 1 Johns. 373. To sustain preferences accepted by a favored creditor, with a knowledge that his debtor was deeply and hopelessly insolvent, would defeat the most important objects of the bankrupt act, and essentially aid insolvent debtors and their relatives and particular favorites in the continued perpetration of the gross wrongs and grosser frauds which have been heretofore allowed under state laws, sustaining voluntary assignments, with such preferences as the insolvent might deem it for his interest, or the interest of those he wished to favor, to make. Independent of the provisions of the 35th section of the bankrupt act, which declares that a sale or transfer, not in the ordinary course of business, shall be prima facie evidence of fraud, the proofs in this case would justify the rejection of the claim of Rider; but aside from this. it is very clear that an act which the bankrupt act declares shall be prima facie evidence of fraud must (unless the presumption of fraud be effectually repelled by opposing proofs) be deemed contrary to its provisions. And a creditor who has before him what the bankrupt act declares shall be prima facie evidence of fraud. must in law be deemed to have reasonable (as he certainly has legal) cause to believe in the existence of such fraud, until

this legal presumption is overborne by opposing evidence. It was insisted that the preference accepted by Rider should only affect the proof of his claim for the small balance due upon the notes on which the payments, etc., were afterwards indorsed; but the proof shows that the payments, etc., were not at the time applied upon any or either of the ten notes held by Rider, but were applicable as much to any one as to any other of them; and that the indorsements were not, in fact, made until some time afterwards. In fact, the preference was given generally upon Rider's debt as an entirety; and to permit him to avoid the effect of the acceptance of such preference by a subsequent application and indorsement of the amount of such preference upon particular notes, nearly paying the same in full, would justify an evasion of the law and a defeat of its provisions, which could be made available in most cases by a shrewd creditor and his accommodating insolvent debtor. The report of the referee is confirmed, and the proof of the debt of Rider is disallowed and rejected with costs.