BREWSTER v. GOFF LUMBER CO.

(District Court, M. D. Pennsylvania, September 11, 1908.)

No. 39, February Term, 1908.

1. BANKRUPTCY—VOIDABLE PREFERENCE—PRESUMPTION OF INTENT TO PREFER.
    Where the effect of a conveyance by an insolvent to a creditor within
    four months prior to his bankruptcy was to give such creditor a pref-
    erence over other creditors, it will be conclusively presumed that it
    was so intended, and the conveyance is voidable if it is shown that
    the creditor knew or had reason to believe such fact.

2. SAME—KNOWLEDGE OF CREDITOR.
    A creditor of a partnership which obtained a conveyance of his home
    property from one of the partners at a time when both the partnership
    and its members were insolvent, and within four months prior to
    their bankruptcy, held, under the evidence, chargeable with knowledge
    of facts which gave it reasonable cause to believe that a preference was
    intended, which rendered the conveyance voidable at suit of the trustee.

In Equity. On final hearing.

Fred B. Davis, William Brewster, G. F. Lazarus, and B. W. Davis,. for plaintiff.

D. A. Fell and James R. Scouton, for defendants.

ARCHBALD, District Judge. This is a bill to set aside a convey-
ance on the ground that it is a preference. On August 7, 1907, D.
B. Moore, of the firm of G. H. Moore & Son, the present bankrupts,.
assigned to the Goff Lumber Company—composed of W. F. and W. S.
Goff—a contract which he had for a lot of land in Forty .Fort, Lu-
zerne county, Pa., on which he had built himself a residence. G. H.
Moore & Son were contractors and builders, and were extensively
engaged in different building operations, for which the Goff Lum-
ber Company, who were materialmen, had furnished lumber, the
amount due them therefor at the time of the conveyance in ques-
tion being $2,679.16, of which $963.08 was for material that had
gone into the D. B. Moore residence, excepting $78 for stairs
and molding, which had been agreed to be furnished and went in
afterwards. The consideration for the conveyance was $961, and was
credited on the general account of the firm. The value of the prop-
erty, with the title in shape and the purchase money paid, was about
$2,500, but it was held by a somewhat dubious arrangement, there
being nothing but a receipt for $50 given the preceding January by
Dr. J. R. Thompson as executor of his wife, who had owned this and
other lots in that vicinity, and had willed them to her minor children,
the price of the lot being fixed in the receipt at $525, and the sale
being made subject to the sanction of the orphans' court of the coun-
ty. Upon the strength of this paper, however, possession was taken,
and a house worth $2,000 was built, which was not quite finished at
the time of the transfer, but was completed subsequently; the Goff
Lumber Company, as already stated, furnishing the greater part of
the material that went into it. The transfer by D. B. Moore to the
Goff Lumber Company was not contemplated at the beginning, but

was adopted as an expedient. The Goff Lumber Company were pressing for the bill which was due them, and the original idea was to borrow money on the property with which to pay it. With this in view, Moore went to Mr. D. A. Fell, attorney for the Thompson estate, to try and get a deed and straighten out the title, in order to make a loan; and this led later on to Moore and W. S. Goff meeting at Mr. Fell's office on August 7th to adjust the matter. There was talk of entering a mechanic's lien for the bill, but Mr. Fell suggested as an alternative that, as the deed to complete the title would take time to secure, Moore should assign over his receipt in satisfaction of the bill, and that course was adopted, with the understanding that Moore should be entitled to redeem the property when a deed was obtained, and he was given the right to do so at any time within a year on payment of $961, the amount with which the firm was credited. Within four months afterwards, on November 18, 1907, G. H. and D. B. Moore, individually and as a firm, filed a voluntary petition in this court, and the same day were adjudged bankrupt; and the trustee now seeks to have this transfer set aside in consequence.

That there was a preference in fact cannot, of course, be gainsaid; the firm, as well as the individual members of it, being insolvent, and the Goff Lumber Company securing by the transaction over one-third of their bill, where other creditors will get practically nothing. This being the inevitable effect, it will be conclusively presumed that it was so intended, even though it may be that Moore had no idea in reality of treating the Goff Lumber Company any differently from or of giving them any advantage over, other creditors. Western Tie & Timber Co. v. Brown, 196 U. S. 502, 25 Sup. Ct. 339, 49 L. Ed. 571. But the trustee must go further to make out a case, and show that the Goffs had reasonable cause to believe that they were getting a preference; and this depends on whether they might or ought to have known that Moore & Son were insolvent, as to which they were affected with whatever put them on inquiry and would lead to a disclosure, actual knowledge not being required. Sundheim v. Ridge Avenue Bank (C. C. A.) 16 Am. Bankr. Rep. 863, 145 Fed. 798.

It is contended on behalf of the defendants that Moore & Son were a going concern engaged in extended operations and kept on for over three months afterwards, and, while short of money, this did not necessarily import that they were insolvent, or could not pay dollar for dollar if they went into liquidation. Their credit was not impaired, as it is claimed, nor were they pressed by other creditors; the Goffs being the only ones who were any way insistent. Furthermore, except for the failure of the Society Circus, by which they lost $5,000, their condition would not have been doubtful, and, this having only occurred in July, the result, even to themselves, was not manifest, hopes being entertained that they would still be able to get their money through the interpleader proceedings which had been instituted. The conveyance in question, moreover, was in payment for material which went into the property, and was made at the suggestion of Mr. Fell, who did not at that time represent the Goffs, in lieu of a mechanic's lien, which it was recognized that they would have a right to enter.

And the right to redeem was reserved, which Moore professedly expected to exercise when the title was straightened out, so that he could borrow money on the property, which dispelled the idea of any permanent embarrassment.

But, on the other hand, the firm were plainly in deep water, and had come to the end of their resources. Their connection with the Society Circus was well known to the Goffs, who had refused them material for it as a losing business; the urgency for the payment of their bills being directly traceable to its failure. The building operations also in which they were engaged, could not be carried on without both money and credit, and, unless capable of being brought to a successful close, were a source of embarrassment, instead of profit. But, more than that, the means of payment adopted was so unusual and extraordinary as to suggest the extreme financial difficulty which the firm was in; parting with the roof over one's head being the last thing that a man agrees to. Neither is it material that the right to a mechanic's lien was given up, if that indeed was the case, which is not fully established. Having parted with the right, they cannot go back and make good the security which they obtained by reference to it, which must be judged by its own qualities and is none the less a preference because of that which it took the place of. Besides that, the defendants did not content themselves with what a mechanic's lien would have given them, but, subject to the payment of the purchase money, absorbed the whole property. Nor is the transaction altogether able to be separated from that which followed it, by which in a few days the defendants also took over the residence of J. H. Moore, the father, the one confirming the other, although there the facts are somewhat different and the preference perhaps plainer. Nor is it of any particular account that there were judgments which were liens on the property; these having played no part in the transfer. The case may be a close one, but, all things considered, the conclusion seems warranted that the signs of insolvency were too many and too marked not to warn the defendants that they were getting a prohibited advantage over other creditors which they cannot now maintain. It is also to be observed that the grantor having reserved to himself an undisclosed interest, while apparently making an absolute conveyance, it is a question whether it was not fraudulent as to creditors aside from its being a preference. 20 Cyc. 555, 568.

Let a decree be drawn sustaining the bill, declaring the transaction complained of to be a voidable preference and directing a conveyance to the trustee, with costs.