## PAULTER V. MANUEL.

### MANUEL V. PAULTER *et al.*

No. 911. ·Opinion Filed November 9, 1909.

(Rehearing Denied May 17, 1910.)

(108 ℙac. 749.)

1. **APPEAL AND ERROR—Cross-Appeal—Dismissal.** A cross-appeal must be prosecuted like other appeals, or it will be dismissed.

2. **APPEAL AND ERROR—Cross-Appeal—Failure to Serve Citation.** Under the law in force in the Indian Territory at the time of the admission of the state, a citation is one of ·the necessary elements of a cross-appeal taken after the term, and if it be not issued and served upon the appellee to the cross-appeal before the end of the next ensuing term of the appellate court, and· be not waived, the cross-appeal becomes 'inoperative.

3. **APPEAL AND ERROR—Report of Master—Presumption of Correctness.** The legal presumption where the evidence is conflicting is that the findings of fact of a master in chancery are correct, and his report will not be set aside unless it appears with reasonable clearness that he has fallen into a mistake of fact.

4. **DEEDS—Cancellation of Instruments—Mental Capacity—Inadequacy of Consideration.** Where a grantor is of a mind so weak and ignorant that she had no intelligent conception of the quality or the quantity of land she was undertaking to convey, and had no intelligent idea of the price offered and paid her, does not understand numbers, and cannot count money, and is so ignorant and weak-minded that she does not know whether $15 is more than $30, or whether $10 is more than $100, and where the consideration was grossly inadequate, a court of equity, upon application of the injured party, will grant relief by setting aside the conveyance; and, where the property has been conveyed by her grantee, and a reconveyance by 'him cannot be ordered, a court of equity will retain jurisdiction, and grant the plaintiff judgment for the value of her land, less the amount actually received by her from her grantee.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of the Indian Territory at Muskogee; William R. Lawrence, Judge.*

Action by Robert J. Manuel, guardian of Lizzie Manuel,

against J. F. Paulter and the Oklahoma Land Company. Decree for plaintiff and defendant Paulter appeals, and plaintiff brings cross-appeal against the Oklahoma Land Company. Affirmed.

This action was originally brought in the United States Court for the Western District of the Indian Territory at Muskogee, by Robert J. Manuel as guardian, of Lizzie Manuel, hereinafter called plaintiff, against J. F. Paulter and the Oklahoma Land Company, hereinafter called defendants. Plaintiff alleges in his complaint that Lizzie Manuel is a Creek freedwoman, and that as such she had allotted to her, and has received, from the government of the United States 160 acres of land, situated a few miles west of Muskogee in the Creek Nation, as her surplus allotment; that she is now, and has been during all her lifetime, a person of unsound mind, and mentally incapable of managing her own affairs and incompetent to contract. He charges that on April 28, 1904, defendant Paulter, knowing full well that Lizzie Manuel was a person of unsound mind, and incapable of understanding or transacting any kind of business, especially business relating to the sale of land, and knowing that she was without sufficient knowledge as to the value of land, by persuasion and coaxing induced her to execute and deliver to him a warranty deed conveying 120 acres of land; that said deed expressed a consideration of $500, while, as a matter of fact, the sum of only $220 was paid by defendant Paulter to her; that on the 28th day of May, 1904, defendant Paulter, with full knowledge of Lizzie Manuel's condition, by persuasion and coaxing induced her to execute to him a second warranty deed conveying 40 acres of such allotment; that said deed expressed a consideration of $150. He also charged that on December 17, 1904, while an application was pending in the United States Court for the Western District of the Indian Territory for an inquiry as to the sanity of the said Lizzie Manuel, and for the appointment of a guardian of her person and estate, the defendant Paulter pretended to make a sale to the Oklahoma Land Company of a portion of the land purported to be conveyed by the deeds from Lizzie Manuel to him. He alleges that said pretended sale

was made by the defendant Paulter to the Oklahoma Land Company for the purpose of divesting defendant Paulter of the title to the land before the court could adjudge Lizzie Manuel a person of unsound mind and appoint a guardian of her estate. Plaintiff prays for a judgment of the court, declaring the deeds from Lizzie Manuel to Paulter void, and for judgment against the Oklahoma Land Company, decreeing that the deed executed by Paulter to it be declared void and directing the same to be canceled, and for general and special relief.

Defendants filed separate answers to plaintiff's petition, and each of them denies that Lizzie Manuel was, at the time of the execution of the deeds to Paulter, a person of unsound mind, and mentally incapable of contracting, and deny that at the time of making such sale her conduct and conversation was such as to apprise defendant Paulter of the condition of her mind, and each denies that the consideration paid by Paulter to her was wholly inadequate. Defendant Paulter alleges that in the deed executed by Lizzie Manuel on April 28, 1904, there was included 40 acres of land, allotted to her as her homestead, which should not have been in the deed, and that there was therefore 40 acres that should have been included; that the deed of May 28th was executed by her for the purpose of correcting this error, and that he had reconveyed to Lizzie Manuel the 40 acres that was included by mistake in the first deed. Both defendants deny that the sale of the land by defendant Paulter to the Oklahoma Land Company on December 17, 1904, was made for the purpose of divesting the title to said lands out of the defendant Paulter and into the land company, and thereby avoid the effect of an adjudication of Lizzie Manuel as being insane, and the appointment of a guardian for her person and estate; and allege that said sale was made in good faith for valuable considerations, and that the Oklahoma Land Company had no knowledge or notice, at the time of its purchase of the land from Paulter, of the mental condition of Lizzie Manuel, and no actual notice of the pendency of the petition

of plaintiff to have her adjudged insane and a guardian of her person and estate appointed.

The case was referred by the court to a special master, to report findings of fact and conclusions of law. The master, by his report or findings of fact, found the issues of fact as to the mental condition of Lizzie Manuel at the time of the execution of said deeds by her to Paulter as alleged in plaintiff's complaint. He further found that the consideration paid by Paulter to her was grossly inadequate, and that, while the evidence showed that the sum of $250, was paid by the defendant Paulter for her land, she had realized for her own benefit only the sum of $58. He further found that the land at the time of its sale to the Oklahoma Land Company was worth the sum of $1,500; that the Oklahoma Land Company did not know, and did not have any actual notice of, the mental condition of Lizzie Manuel when it bought the land of Paulter. He found as his conclusions of law that the deeds from Lizzie Manuel to Paulter were voidable; that the petition pending in the probate court, asking that Lizzie Manuel be declared insane was not constructive notice to the Oklahoma Land Company, and that the Oklahoma Land Company was an innocent purchaser for value without notice, and had a good title to the land in controversy, and recommended that a decree be rendered declaring the Oklahoma Land Company the owner of the land in controversy, and that plaintiff recover against the defendant Paulter the value of said land at the time of the execution of said deeds, the sum of $1,500, less the sum of $58, actually used by Lizzie Manuel for her benefit.

A decree was rendered by the court in conformity with the recommendation of the master. From this decree defendant Paulter filed his appeal in the United States Court of Appeals for the Indian Territory, and plaintiff prosecutes herein his cross-petition against the Oklahoma Land Company, by which he seeks to have reversed that portion of the decree which declares that the Oklahoma Land Company is the owner of the land in controversy, and that it acquired same for a valuable consideration, without

notice, either actual or constructive, as to the mental condition of Lizzie Manuel at the time she conveyed the same to Paulter.

N. A. Gibson and Masterson Peyton, for appellant, Paulter.
Gibson & Thurman, for appellee Oklahoma Land Co.
S. B. Daws, for appellee Manuel.

HAYES, J. (after stating the facts as above). The judgment in this action was rendered in the United States Court for the Western District of the Indian Territory at Muskogee on the 29th day of June, 1907. On the 19th day of September, 1907, appellant presented to the Honorable William R. Lawrence, Judge of the United States Court of Appeals for the Indian Territory, his petition for appeal, which was allowed, and the transcript was filed in the United States Court of Appeals for the Indian Territory on October 21, 1907, where the cause was pending on the admission of the state.

On the 17th day of October, 1907, appellee Robert J. Manuel, as guardian of Lizzie Manuel, presented to the said William R. Lawrence his petition for a cross-appeal, which was allowed, and the transcript was filed in this court on March 14, 1908. No citation was issued by Judge Lawrence at the time he allowed the cross-appeal, and none has been issued by this court, or any member thereof. By the cross-appeal, appellee in the main appeal seeks to have reversed that portion of the judgment of the trial court which decrees the Oklahoma Land Company to be the owner of the land in controversy. The Oklahoma Land Company was not a party to the appeal taken by appellant, Paulter, and entered no general appearance in this court to the cross-appeal before the end of the next ensuing term of this court after the cross-appeal was taken. Counsel for the Oklahoma Land Company in their brief have raised the question of this court's jurisdiction to determine any matters raised by the cross-appeal. It has several times been held by this court that the act of Congress of March 3, 1905 (Act March 9, 1905, c. 1479, par. 12, 33 Stat. 1081 [U. S. Comp. St. Supp. 1909, p. 219]), put in force in the Indian Territory the

federal appellate procedure, and that such procedure governs all appeals taken from judgments rendered in the United States courts of the Indian Territory before the admission of the state. *Kelley v. McCombs et al.,* 23 Okla. 867, 102 Pac. 186; *Parks v. City of Ada,* 24 Okla. 168, 103 Pac. 607. Cross-appeals must be prosecuted like other appeals. *The S. S. Osborne,* 105 U. S. 447, 26 L. Ed. 1065; *Hilton v. Dickinson,* 108 U. S. 165, 2 Sup. Ct. 424, 27 L. Ed. 688; *Farrar v. Churchill,* 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 246. Citation is one of the necessary elements of an appeal taken after the term, and if it be not issued and served before the end of the next ensuing term of the appellate court, and be not waived, the appeal becomes inoperative. *Parks v. City of Ada, supra; Jacobs v. George,* 150 U. S. 415, 14 Sup. Ct. 159, 37 L. Ed. 1127. On the 28th day of March, 1908, appellee, Robert Manuel, as guardian, had issued by the clerk of this court a summons in error, notifying appellant, J. F. Paulter, and the Oklahoma Land Company of his cross-appeal, and this summons in error was served, but appellee could not complete his cross-appeal in this manner. While no specific form of citation is required, and it is probable that the notice contained in the summons in error would be sufficient if the clerk of the court had had authority to issue citation, yet the clerk is without such authority. *Parks v. City of Ada, supra; Freeman v. Clay et al.,* 48 Fed. 849, 1 C. C. A. 115; *United States v. Hodge,* 3 How. 534, 11 L. Ed. 714. The cross-appeal, therefore, after the expiration of the ensuing term of this court after the allowance thereof, became inoperative, and we can review nothing attempted to be presented by it.

Counsel for appellant, in the main appeal, urge in their brief several assignments of error, but all the different assignments urged by them in effect present but one contention, which is that, at the time Lizzie Manuel executed the deed of conveyance to appellant, she was a person of sound mind, with sufficient mental capacity to make the conveyance; that she received a fair consideration for the land conveyed, and no fraud was perpetrated in the trans-

action. This contention presents only issues of fact. Many witnesses for both parties testified before the master upon these questions; and the master, after hearing all the evidence, found upon all these issues against appellant, and the trial court approved and confirmed his findings, and entered judgment accordingly. The master found:

"That Lizzie Manuel was, at the time of signing the deeds to J. F. Paulter, and has been continuously from her childhood, of a very weak mind, and very ignorant. Her mind is so weak, and she is so ignorant, that she has no intelligent conception of the quantity nor quality of the land she was undertaking to convey, nor did she have any intelligent idea of the price offered and paid to her. She does not understand numbers, nor can she count money. When she made her mark to the deeds, and had the same explained to her by members of the Buck family who went with her and a notary public, she did not know, nor had she mental capacity to comprehend, that she was conveying 120 acres of land, and was to receive therefor $250. She understood that she was only selling land to get money; but what or how much land was conveyed, or how much money she was receiving or to receive, was beyond her comprehension. She was then, and still is, so ignorant and weak-minded that she does not know whether $15 is more or less than $30, or whether $10 is greater or less than $100. That her weakness of mind was sufficiently apparent, from her conduct and conversation, to attract the attention of the purchaser, Paulter, and put him upon notice and inquiry concerning her mental capacity to contract. * * * The sum of $250 paid by the defendant Paulter for said land was grossly inadequate."

We have carefully examined all the evidence; and, while there is some conflict, we believe that the master was fully warranted in the finding above set out. Under the rule of the jurisdiction in which this case arose and was tried, the legal presumption, where the evidence is conflicting, is that the finding of fact of the master in chancery is correct, and his report will not be set aside, unless it appears with reasonable clearness that he has fallen into a mistake of fact. *Blakemore v. Johnson*, 24 Okla. 544, 103 Pac. 554; *Guarantee Gold Bond Loan & Sav. Co. v. Edwards*, 164 Fed. 809, 90 C. C. A. 585.

The master does not find that Lizzie Manuel is insane, or that she is without mental capacity sufficient to transact any business whatever, but he finds that her mind is so weak, and she is so ignorant, and her intelligence is so inferior, that she was unable to comprehend or understand the nature or character of the transaction by which she conveyed her land to appellant. This woman from childhood has had a very weak mind, bordering on idiocy. She, however, is not entirely without mental capacity, for she has sufficient intelligence to know how to work, is a good cook, and discharges the other duties of a servant satisfactorily to those employing her. She is able to transact minor and unimportant business. such as buying clothing, small quantities of groceries, and knows the value thereof. She understood what it was to have a bank account, and that money could be drawn by issuing checks thereon. She is unable to read and write, but at several times after the sale of her land she requested others to draw checks for her upon the bank where she had her account for small amounts, but the evidence is convincing that she was incapable of understanding the nature and character of the transaction between her and appellant. She did not then know, and does not now know how many acres of land she had conveyed, or its value, and is and was at the time she executed the deed mentally incapable of understanding same. She cannot count 10, and does not know which is greater, $10 or $100, and has no idea of values whatever above small amounts, such as the price of a dress, pair of shoes, or small quantities of groceries. After the restrictions upon her power to sell her allotment were removed, she at once became anxious to sell the same. Witnesses testify, and it is not controverted or denied, that she gave to appellant as her reason for wanting to sell that she wanted to sell the land before somebody else sold it, and she would not get the money. The reason assigned by her to appellant for wanting to sell the land was sufficient to put him on notice of her inability to understand the nature and character of her rights and interest in and to the land and her power to control the same. At the time of the sale she

was living with a family by the name of Buck. Several members of this family accompanied her to town on the day the deed was executed, and were present at the time of the execution of the deed. One member of this family received $100 of the money purported to have been paid by appellant to Lizzie Manuel for the land. This incident, together with the conduct of the members of the Buck family, show them to have been interested ·in the sale. Mrs. Buck, who received the money, executed her note for the amount, but the same, although due, has never been paid. All the members of the Buck family who were present at the execution of the deed appeared as witnesses for appellant at the trial. But their evidence as to what took place at the time of the execution is at variance with the evidence of the notary who took the acknowledgment and with the evidence of each other. The notary stated that he made no explanation of the deed at the time of the execution thereof, except that he read the same; that Lizzie Manuel said she understood it, but he did not know whether she did or not. Some members of the Buck family testified that a full explanation of the deed and its contents was made to her. Others testified that nothing was done except the reading of the deed by the notary; and the members of the family who testify that the deed was explained to her could not remember what parts of the deed were explained, or what was said; and. although this transaction was consummated by appellant in person, and he is in full possession of all the details surrounding the same, he did not testify. The consideration paid ·by him was grossly inadequate.

It was not necessary, in order to entitle appellee to relief, to show that she was, at the time of the execution of the deed, insane, or so mentally weak that she was entirely disqualified to transact any business. It was sufficient to show that her mental weaknesses and infirmities were such that she was at that time incapable of understanding the nature and magnitude of the transaction, and that there was gross inadequacy of consideration for the conveyance. From these circumstances imposition or undue influence will be inferred, and they alone are sufficient to secure

the aid of a court of equity. *Allore v. Jewell,* 94 U. S. 506, 24 L. Ed. 260. In the case of *Harding et al. v. Wheaton,* 2 Mason, 378, Fed. Cas. No. 6,051, Mr. Justice Story said:

"Extreme weakness will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity; and though a contract in the ordinary course of things, reasonably made, with such a person might be admitted to stand, yet if it should appear to be of such a nature as that such a person could not be capable of measuring its extent or importance, its reasonableness, or its value fully and fairly, it cannot be that the law is so much at variance with common sense as to uphold it."

Mr. Chief Justice Marshall, discussing this same case on appeal to the Supreme Court of the United States, in *Harding v. Handy,* 11 Wheat, 103, 6 L. Ed. 429, said:

"If these deeds were obtained by the exercise of undue influence over a man whose mind had ceased to be the safe guide of his actions, it is against conscience for him who has obtained them to derive any advantage from them. It is the peculiar province of a court of conscience to set them aside. That a court of equity will interpose in such a case is among its best-settled principles."

Mr. Justice Field, in *Allore v. Jewell, supra,* after quoting the language of Mr. Justice Story and Mr. Chief Justice Marshall, said:

"The same doctrine is announced in adjudged cases, almost without number; and it may be stated as settled law that, whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate a court of equity will, upon proper and seasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside."

The doctrine of this case finds recognition and support in cases from the highest courts of almost every state in the Union. *Jones v. McGruder,* 87 Va. 360, 12 S. E. 792; *Fishburne v. Ferguson's Heirs,* 84 Va. 87, 4 S. E. 575; *Turner v. Utah Title Insurance & Trust Co.,* 10 Utah, 61, 37 Pac. 91; *Taylor v. Atwood,* 47

Conn. 498; *Ashmead et al. v. Reynolds et al.,* 134 Ind. 139, 38 N. E. 763; 39 Am. St. Rep. 238; *Ikerd et al. v. Beavers,* 106 Ind. 483, 7 N. E. 326; *Wilkie, Gdn. v. Sassen,* 123 Iowa, 421, 99 N. W. 124; *Clark v. Lopez,* 75 Miss. 932, 23 South. 648, 957; *Richards v. Donner,* 72 Cal. 207, 13 Pac. 584; *Walling v. Thomas et al.,* 133 Ala. 426, 31 South. 982.

The master, under the order of court, reported both findings of fact and conclusions of law. He found that the Oklahoma Land Company, at the time it purchased the land in controversy from appellant, had no knowledge or notice of the mental condition of Lizzie Manuel when she conveyed the land to appellant, or of other circumstances surrounding the transaction; that said company was an innocent purchaser for value and has good title to the land in controversy. This finding and conclusion of the master was confirmed by the trial court, and has not been assigned or urged in this case as error; nor has any contention been made by appellant that the trial court was without authority in this proceeding to award appellee judgment for the damages sustained by her by reason of the transaction and the act of appellant conveying the land to the Oklahoma Land Company. His sole contention is that the evidence does not support the master's findings as to the condition of appellee's mind and the consideration paid for the land. Under the application of the rule that appellant in his brief shall specify separately the errors complained of, and shall argue and support with authorities each point relied upon, we forego a consideration of this action of the court, and have made no extensive examination of the authorities with reference thereto, but the judgment of the court in this respect finds support in *Cole v. Getzinger et al.,* 96 Wis. 559, 71 N. W. 75.

Finding no error in the assignment urged and relied upon in this court, the judgment of the trial court is affirmed.

All the Justices concur.