## HUME, *Trustee,* v. BROWN SHOE CO.

No. 1091.    Opinion Filed November 14, 1911.

Rehearing Denied October 1, 1912.

(126. Pac. 823.)

1.    **BANKRUPTCY—Fraudulent Preferences—Knowledge of Creditor.**
Notice of facts which would incite a person of reasonable prudence
to an inquiry under similar circumstances is notice of all the
facts which a reasonably diligent inquiry would develop; and
where the effect of a conveyance by an insolvent to a creditor,
within four months prior to his bankruptcy, was to give such credi-
tor a preference over other creditors, it will be conclusively pre-
sumed that it was so intended; and the conveyance is voidable
if it is shown that the creditor · knew or had reasonable cause
to believe such fact.

2.    · **APPEAL AND ERROR—Review — Necessity of Cross-Petition.**
Alleged errors committed by the trial court, of which defendant
in error complains, will not be considered, but held to be waived,
where no cross-petition in error is filed.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*George W. Clark, Judge.*

Action by C. Ross Hume, trustee in bankruptcy of M. J.
Duncan, against the Brown Shoe Company.  Judgment for de-
fendant, and plaintiff brings error.  Reversed and remanded,
with instructions.

*Harris & Wilson,* for plaintiff in error.

*R. N. McConnell,* for defendant in error.

DUNN, J.  This case presents error from the district court
of Oklahoma county.  C. Ross Hume, trustee in bankruptcy of
the estate of M. J. Duncan, a bankrupt, began this action to re-
cover of and from the Brown Shoe Company, the defendant,
the value of certain property conveyed to it, contrary to the ·
provisions of sections 60a and 60b of the national bankruptcy
act of 1898 (Act July 1, 1898, c. 541, 30 St. at L. 562 [U. S.
Comp. St. 1901, p. 3445]), as amended by the act of 1903

(Act Feb. 5, 1903, c. 487, sec. 73, 32 St. at L. 799 [U. S. Comp. St. Supp. 1911, p. 1506]). The adjudication of Duncan a bankrupt, under the facts shown, relieves us of a consideration of any of the questions presented, or sought to be presented, by counsel on this branch of the case, with the exception of the issue made by the averment that the bankrupt, with the intent to prefer the said Brown Shoe Company over and above all of his other creditors, made and delivered to defendant a chattel mortgage containing a power of sale, and the defendant received the same with knowledge of the insolvency of the bankrupt, and when it received and took possession of the stock of goods covered by said mortgage, it had reasonable ground to believe that a preference was intended. The defendant filed an answer which was in effect a general denial, and also denied specifically that the instrument was executed by the bankrupt with the intention on his part to prefer the defendant over any of the other creditors, and alleged that it had no reasonable cause to believe, and did not believe, that it was intended that defendant receive a preference, or that the chattel mortgage did constitute a preference over and above the other creditors of the bankrupt. Upon the issues thus made, the cause was tried to the court upon the evidence of the plaintiff alone, at the conclusion of which the defendant rested and submitted the cause thereon. The court in its consideration found for the defendant, and plaintiff has brought the action to this court to secure a review of the judgment rendered.

Sections 60a and 60b of the bankruptcy act under which plaintiff is proceeding read as follows:

"Section 60a. A person shall be deemed to have given a preference, if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of recording or registering

of the transfer if by law such recording or registering is required.

"Sec. 60b. If a bankrupt shall give a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. And, for the purpose of such recovery, any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdictions."

The undisputed facts, as disclosed by the record, may be summarized as follows: The defendant, the Brown Shoe Company, had, prior to April 29, 1904, a past-due account against the bankrupt, who conducted a general mercantile business at the village of Binger, in Caddo county. On or about the 23d day of April, 1904, its counsel in Oklahoma City received from it for collection this account. Without correspondence or other information, on the 29th day of April, 1904, he traveled to Binger for the purpose of making collection. On arrival he found the debtor was not at his store, but that it was in charge of a clerk. Learning that the debtor was at Anadarko, the county seat, he proceeded to that place, and on the same afternoon took from him a chattel mortgage of the entire stock of merchandise, with authority to dispose of the same at public auction, or private sale, without notice, at the place where the property was found, or at any other place in the county, and providing for the recovery of all costs involved therein, with a 15 per cent. attorney's fee; also a specific waiver of all right and claim for damages by reason of the seizure or sale of the property under the terms of the mortgage, regardless of the price for and the manner in which the same was seized or sold. The mortgage was given to secure a note covering the claim, payable on demand, in the sum of $1,048.65. Immediately after securing the chattel mortgage, counsel for defendant, by telephone, arranged for taking immediate possession of the stock of goods by the clerk, whom he had found in charge of the bankrupt's business. Thereafter and on the succeeding day he sent from his office one of his employees to take charge of the goods, with instructions to

sell the same as soon as possible, without unnecessary sacrifice. Six days thereafter, and on the 5th day of May, 1904, a sale was made of the stock of goods, counsel for defendant receiving approximately $1,375 therefor, out of which he paid the defendant and one other creditor the full amount of their claims, and, aside from the expenses, returned the balance, about $100, to the bankrupt. The chattel mortgage under which this was done was not filed until the morning of the day on which the sale was made.

The stock of merchandise which was taken, and a few worthless accounts, constituted the entire assets of the debtor. It was shown by several witnesses to have been of general knowledge throughout the community that the bankrupt, for some months prior to the transfer of the stock, had been negligent of his business, often leaving his store locked a day at a time, and for the month next preceding the same had not been in his store more than four days out of the week, while he drank and gambled in a dissolute manner. It was not necessary for the recovery of plaintiff in this case that the defendant should have actual knowledge of any or all of these things. It was necessary only that it or its agent had reasonable cause to believe that the bankrupt intended, in making the transfer, to give to it a preference; and the rule in such cases, as stated by the Circuit Court of Appeals of the Eighth Circuit, in the case of *Coder v. Mc-Pherson,* 152 Fed. 951, 82 C. C. A. 99, is that "notice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop."

And in the case of *Brewster v. Goff Lumber Co.* (D. C.) 164 Fed. 124, the rule was declared that:

"Where the effect of a conveyance by an insolvent to a creditor, within four months prior to his bankruptcy, was to give such creditor a preference over other creditors, it will be conclusively presumed that it was so intended; and the conveyance is voidable if it is shown that the creditor knew or had reason to believe such fact."

Other cases supporting the same principles may be noted, as follows: *Huttig Mfg. Co. v. Edwards,* 160 Fed. 619, 87 C. C.

A. 521; *In re W. W. Mills Co.* (D. C.) 162 Fed. 42; *McElvain v. Hardesty,* 169 Fed. 31, 94 C. C. A. 399; *Thomas v. Adelman* (D. C.) 136 Fed. 973; *Hardy v. Gray et al.,* 144 Fed. 922, 75 C. C. A. 562; *In re Andrews* (D. C.) 135 Fed. 599; *Walbrun v. Babbitt,* 16 Wall. 577, 21 L. Ed. 489.

It is certain that the debtor was insolvent; that a preference was accomplished and intended; but, did the agent of the creditor have reasonable cause to believe such preference was intended? This is the question. If it had reasonable cause to believe that Duncan was insolvent when taking its payment, it must be held to have had reasonable cause to believe that a preference was intended; and, if so, the trustee is entitled to recover.

It is said, in the case of *In re Andrews, supra,* that:

"If the debtor is insolvent, he intends preference by any payment of a pre-existing debt. If the creditor has reasonable cause to believe that the debtor is insolvent, then the creditor has reasonable cause to believe that a preference is intended. * * * The payment alleged to be preferential was not made by cash on account in the ordinary course of business, but by a return of goods. Hardy testified, in substance, that he believed the bankrupt to be solvent at the date of the preference, and the referee, with whom I have conferred, was favorably impressed by Hardy's testimony, and believed it to be true. I do not find the contrary; but the undisputed circumstances mentioned above, as well as others contained in the testimony, establish that Hardy, whatever his actual belief, had reasonable cause to believe that Andrews was insolvent, and I so find."

And in the case of *McElvain v. Hardesty, supra:*

"If McElvain did not have actual knowledge of the insolvent condition of his debtors, we think, in the circumstances of this case, he is constructively chargeable with that knowledge. He took a transfer of all his debtors' property—of a going concern—in satisfaction of a debt. This in itself was an unusual thing; and the reasons which actuated it must have sprung from a fear or suspicion of danger. Solvent and prosperous business houses do not commonly pay debts that way."

And by the Supreme Court of the United States, in the case of *Walbrun v. Babbitt, supra:*

"The usual and ordinary course of Mendelson's business was to sell at retail a miscellaneous stock of goods, common to country stores, in a small town in the interior of the state of

Missouri.   It was to conduct a business of this character that the goods were sold to him; and, as long as he pursued the course of a retailer, his creditors could not reach the property disposed of by him, even if his purpose at the time were to defraud them.   But it is wholly a different thing when he sells his entire stock to one or more persons.   This is an unusual occurrence, out of the ordinary mode of transacting such a business, is *prima facie* evidence of fraud, and throws the burden of proof on the purchaser to sustain the validity of his purchase.   *Scammon v. Cole,* 5 N. B. R. 257 [Fed. Cas. No. 12,432]; *Graham v. Stark,* 3 N. B. R. 357 [Fed. Cas. No. 5,676]; *Kingsbury v. Hale,* 3 N. B. R. 317 [Fed. Cas. No. 7,816]; *Driggs v. Moore,* 3 N. B. R. 602 [Fed. Cas. No. 4,083]; *Tuttle v. Truax,* 1 N. B. R. 601 [Fed. Cas. No. 14,277].   Summerfield seeks to overthrow the legal presumption that Mendelson intended to commit a fraud on his creditors by showing that he had paid full value for the goods in ignorance of the condition of Mendelson's affairs.   But the law will not let him escape in this way.   The question raised by the statute is not his actual belief, but what he had reasonable cause to believe.   In purchasing in the way and under the circumstances he did, the law told him that a fraud of some kind was intended on the part of the seller; and he was put on inquiry to ascertain the true condition of Mendelson's business.   This he did not do; nor did he make any attempt in that direction.   Indeed, he contented himself with limiting his inquiries to the object Mendelson had in selling out, and to his future purposes.   Something more was required than this information to repel the presumption of fraud which the law raised in the mere fact of a retail merchant selling out his entire stock of goods.   If this sort of information could sustain the sale, the provision of the bankrupt law we are considering would be no protection to creditors; for any one in Mendelson's situation, and with the purpose he had in view, would be likely to give the party with whom he was dealing a plausible reason for his conduct.   The presumption of fraud arising from the unusual nature of the sale in this case can only be overcome by proof on the part of the buyer that he took the proper steps to find out the pecuniary condition of the seller.   All reasonable means, pursued in good faith, must be used for this purpose.   If Summerfield had employed any means at all directed to this end, he would have discovered the actual insolvency of Mendelson.   In choosing to remain ignorant of what the necessities of his case required him to know, he took the risk of the impeachment of the transaction by the assignee

in bankruptcy, in case Mendelson should, within the time limited in the statute, be declared a bankrupt."

In the case at bar, it appears that the agent of the creditor made virtually no effort whatsoever to ascertain the debtor's financial situation and condition; and the speed with which the entire transaction was conducted, and the fact that it involved the business suicide of the debtor, in our judgment, was such as to render conclusive the fact that the agent of the creditor had reasonable cause to believe that a preference was intended when he took and appropriated all of the debtor's property to the payment of his client's debt. Solvent business houses do not pay debts that way. The entire transaction bears evidence of such reckless disregard of the ordinary precautions taken by solvent men in their dealings that we cannot but find that error was committed in holding that the creditor did not have reasonable cause to believe it was securing a preference, and that the same was intended. Under these circumstances, the judgment of the trial court will be reversed, and, as the defendant submitted the cause upon the evidence submitted by the plaintiff, the same will be remanded with instructions to set aside the judgment heretofore entered and enter one against the defendant for the amount received by its agent for the goods sold, which appears from the evidence to be $1,375. *Douglass v. Anderson,* 32 Kan. 350, 4 Pac. 257.

Counsel for defendant seeks to present in his brief the error which he contends the court committed in overruling his motion striking at the service had in this case; it being his claim that the same was insufficient to secure jurisdiction of the defendant, and that the judgment rendered herein was therefore void. No cross-petition in error setting forth this error was filed; and, in the absence thereof, the error complained of, if any existed, cannot be considered, and will be held to have been waived. *Turner v. Mills et al.,* 22 Okla. 1, 97 Pac. 558; *Paulter v. Manuel,* 25 Okla. 59, 108 Pac. 749; *Missouri Pacific Ry. Co. v. Lea,* 47 Kan. 268, 27 Pac. 987; Burdick, New Trials and Appeals, sec. 177.

The case is accordingly reversed and remanded to the trial court for judgment in accordance with the foregoing.

TURNER, C. J., and HAYES, WILLIAMS, and KANE, JJ., concur.